IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI, CENTRAL DIVISION

| | |
|---|---|
| JOHN P. LIPP, | ) |
| | ) |
| And | ) |
| | ) |
| STEPHANIE S. LIPP, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| GINGER C, L.L.C. | ) |
| <u>Serve Registered Agent</u>: | ) |
|     Asmar, Nakhle H. | ) |
|     709 Sherwood Drive | ) Jury Trial Demanded |
|     Jefferson City, MO 65109 | ) |
| | ) |
| And | ) |
| | ) |
| PI KAPPA PHI FRATERNITY | ) |
| NATIONAL HEADQUARTERS | ) |
| <u>Serve</u>: | ) |
|     Meghan Gibson, Administrator | ) |
|     2015 Ayrsley Town Blvd. Suite 200 | ) |
|     Charlotte, NC 28224 | ) |
| | ) |
| And | ) |
| | ) |
| PI KAPPA PHI FRATERNITY | ) |
| MISSOURI BETA EPSILON CHAPTER, | ) |
| <u>Serve</u>: | ) |
|     Lukas D. Reichert, Vice Archon | ) |
|     500 Rollins Street | ) |
|     Columbia, Missouri 65201 | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

COME NOW Plaintiffs John P. Lipp and Stephanie S. Lipp, pursuant to RSMo § 537.080, for this wrongful death cause of action against defendants, jointly and severally, and state and allege as follows:

1

## Parties

1. Plaintiff John P. Lipp is a resident of Libertyville, Lake County, Illinois and at all times relevant hereto, John P. Lipp was the natural father of decedent, Jack Lipp (hereinafter "The Decedent").

2. Plaintiff Stephanie S. Lipp is a resident of Libertyville, Lake County, Illinois and at all times relevant hereto, Stephanie S. Lipp was the natural mother of The Decedent.

3. The Decedent had no spouse nor surviving lineal descendants, therefore pursuant to RSMo § 537.080(1), John P. Lipp and Stephanie S. Lipp (hereinafter collectively referred to as "Plaintiffs"), are the proper parties to bring suit for the wrongful death of The Decedent.

4. Defendant Ginger C, L.L.C. (hereinafter "Defendant Ginger C") is a Missouri limited liability corporation with its principal place of business in Jefferson City, Cole County, Missouri, and with its registered agent Nakhle H. Asmar, 709 Sherwood Drive, Jefferson City, MO 65109.

5. Defendant PI KAPPA PHI FRATERNITY NATIONAL HEADQUARTERS, is a nationwide unincorporated association of individuals that is a "values based membership development organization that focuses on building brotherhood through character enhancement, leadership development, academic achievement, commitment to service, life-long friendship and social experience".

6. Defendant PI KAPPA PHI FRATERNITY MISSOURI BETA EPSILON, is a local unincorporated association of individuals that is the University of Missouri Pi Kappa Phi Fraternity Chapter located in Columbia, Missouri.

## Jurisdiction and Venue

7. This is a civil action filed under Missouri state law seeking damages against Defendants for committing acts that caused the wrongful death of Jack Lipp in the State of Missouri.

8. Venue is proper in this Court pursuant to RSMo § 508.010, Local Court Rule 3.1(b)(2), and 28 U.S.C. § 1332 as Plaintiff was first injured in Boone County, Missouri and there is complete diversity among the parties.

9. Plaintiffs' damages exceed Seventy Five Thousand and No/100 Dollars ($75,000.00).

## Facts Applicable to All Counts

10. On or about September 1, 2013, Defendant Ginger C, LLC (hereinafter "Ginger C"), contracted to purchase real estate property located in Columbia, Missouri known as 507 South Fourth Street (hereinafter "the property").

11. At that time, defendant Ginger C had a contract with American Campus Communities (hereinafter "ACC"), the self-proclaimed nation's largest developer, owner and manager of student housing, located in Austin, Texas, to re-sale and re-develop "the property" once the City of Columbia had approved the project.

12. On or about February 1, 2014, ACC submitted plans and an application to the City of Columbia for redevelopment of "the property" into a 718-bed apartment complex.

13. On March 19th, 2014, Columbia's City Council voted to table ACC's redevelopment project for "the property".

14. On May 7th, 2014, Columbia's City Council again voted to table ACC's redevelopment project for "the property".

15. On August 5th, 2014, Columbia's City Council voted to table ACC's redevelopment project for "the property" for the 3rd time.

16. Due to the delay of the project, on or about August 6th, 2014 Ginger C informed the current owner of "the property" to go ahead and lease the existing structure to any tenants for the upcoming school year that were willing to sign a lease as of that late date before the school year began

17. On or about August 12, 2014, "the property" was leased to Michael Novak, Christopher Strazalka, and Charlie Smith, all members of the Pi Kappa Phi Fraternity.

18. On August 19th, 2014, Columbia's City Council voted to approve ACC's redevelopment project for "the property".

19. On or about September 15, 2014, Ginger C borrowed $2,160,000 from ACC to purchase "the property" by securing Sanford Arms condominiums, it owned, as collateral.

20. On or about October 22nd, 2014, Ginger C completed the real estate purchase contract for "the property" by paying the funds provided to it by American Campus Communities,

21. Prior to the real estate closing, the member manager of Ginger C walked through "the property" and also had "the property" inspected by a certified real estate home inspector.

22. After the real estate closing, on or about November 1, 2014, the member manager of Ginger C initiated inspections of "the property" in order to comply with the City of Columbia ordinances.

23. At that time, Ginger C was aware of a wooden balcony on a second story deck on the south side of "the property" that had been temporarily repaired by the prior owner with unpainted 2"x4" boards of wood.

4

24. One of the tenant's, Michael Novak's, mother even complained to Ginger C about the temporary repair job of the wooden balcony on the second story deck on multiple occasions and also declared to the tenants that the deck was "off-limits" because it was unsafe.

25. Despite being completely aware of the dangers posed by the wooden balcony and the second story deck, Ginger C did not make any additional repairs to "the property" as it was scheduled to be demolished within a short amount of time.

26. On December 12th, 2014, tenants Michael Novak, Christopher Strazalka, and Charlie Smith, agreed to host a Pi Kappa Phi "rush party" at the request of the local Pi Kappa Phi Rush Chairman Lukas D. Reichert.

27. The purpose of a Pi Kappa Phi "rush party" is to introduce newly enrolled freshman students at the University of Missouri into a social party atmosphere where alcohol is primarily used as a lure for them to "sign" with that particular fraternity.

28. Based on the photographs and statements collected by the City of Columbia Police Department, the Pi Kappa Phi "rush party" on December 12th and 13th, 2014 at the property was completely out of control and fostered a scenario of destruction and alcohol abuse.

29. This atmosphere was created in part by the tenants knowledge that the property was set to be demolished for redevelopment.

30. According to the City of Columbia Police Department, all of the witnesses interviewed, including but not limited to Michael Novak, Christopher Strazalka, Charlie Smith and Lukas D. Reichert, "were extremely intoxicated".

31. According to the City of Columbia Police Department photos, the property was a completely destroyed mess and according to witness accounts over 100 people attended the Pi Kappa Phi "rush party".

32. It is believed that Jack Lipp arrived at the Pi Kappa Phi "rush party" at the property around 1:15 a.m. on December 13th, 2014.

33. At some point between 1:15 a.m. and 2:15 a.m., Jack Lipp went out onto the second floor deck to relieve himself instead of using the bathroom indoors where it was believed long lines had formed.

34. According to the City of Columbia Police Department, photos showing copious amounts of liquid on the driveway underneath the deck had accumulated to the point where the first responding officers even thought that the tenants may have "washed down" the driveway with the water hose.

35. Upon information and belief, the mass amount of liquid on the driveway underneath the deck gathered there from numerous Pi Kappa Phi "rush party" attendees that used that location as a bathroom without long lines, instead of it being washed down with a water hose.

36. At some point while Jack Lipp was on the second story deck, the wooden balcony gave way and Lipp fell 18 feet to the driveway below where he suffered serious and life-threatening injuries to his head and brain.

37. After 911 was called, emergency personnel transported Jack Lipp by ambulance just a short distance away to University Hospital.

38. Over the next 10 days, Jack Lipp received treatment and care for his head injuries, however on December 25, 2014, with a very poor prognosis for survival, Jack Lipp succumbed to his injuries and died.

## COUNT I –Negligence
## (Defendant Ginger C, L.L.C.)

COME NOW Plaintiffs, by and through counsel, and for Count I of their cause of action against Defendant Ginger C state and aver to the court as follows:

39. Plaintiffs incorporate herein by reference each and every allegation contained in the aforementioned paragraphs as if set forth herein at length and verbatim.

40. At all times herein mentioned and at the time of the incident, Defendant Ginger C was acting individually and through its respective agents, employees, and/or representatives, each of whom were acting within the course and scope of their employment with Defendant Ginger C.

41. Defendant Ginger C is vicariously liable for the acts of their agents, employees, and/or representatives as discussed herein.

42. On the 22nd day of October, 2014 Defendant Ginger C became the landlord and owner of the property, continued to collect rent from lessees, and took on the duties of a property owner and landlord, namely to ensure the premises were free of any dangerous defects, or to protect and warn the tenants and the tenants guests of any known dangers, and to fix any dangerous conditions of the property within a reasonable time frame.

43. Defendant Ginger C, both before and after purchase, performed a walk through and inspection of the premises and became aware of a hazardous condition on the property, namely the rotten and insecure wooden railings on the second story deck.

44. Defendant Ginger C was made aware of the dangerous condition of the wooden railing and the second story deck by the tenants and one of the tenant's mother who thereafter declared that the deck and railing was too dangerous to use.

7

45. On December 13th, 2014, Jack Lipp was a guest of the lessees and was lawfully on the Subject Property as an "invitee" for the Pi Kappa Phi "rush party", and leaned against the wooden railing which collapsed causing Lipp to fall from the second story balcony onto the paved driveway below.

46. The fall of Jack Lipp, his resulting injuries, and his eventual and untimely death were the direct and proximate result of the negligent acts or omissions of Defendant Ginger C by and through its agents, employees, and/or representatives, in one or more of the following particulars, to wit:

   a. Defendant Ginger C by and through its agents, employees, and/or representatives, negligently failed to maintain the second story balcony railing in a manner allowing for its safe use by lessees and their invited guests;

   b. Defendant Ginger C by and through its agents, employees, and/or representatives, failed and omitted to warn invitees such as The Decedent of the potential dangers and hazard and unstable condition of the second story balcony railing;

   c. Defendant Ginger C by and through its agents, employees, and/or representatives, failed to and omitted to warn The Decedent of the dangerous condition of the second story balcony railing;

   d. Defendant Ginger C by and through its agents, employees, and/or representatives, failed to inspect the second story balcony railing so as to discover and correct the unreasonably dangerous condition that was not open and obvious to invitees such as The Decedent;

e. Defendant Ginger C by and through its agents, employees, and/or representatives, failed to properly use caution signs to inform invitees that the second story balcony railing was insecure;

f. Defendant Ginger C by and through its agents, employees, and/or representatives, failed to warn of a dangerous condition on the premises which was known, or in the exercise of ordinary care should have been known, by Defendant Ginger C but would not be expected to be observed by invitees on the premises, namely that the second story balcony railing was insecure;

g. Defendant Ginger C by and through its agents, employees, and/or representatives, permitted and allowed said premises to become and remain in a negligent, defective, and unreasonably dangerous condition;

h. Defendant Ginger C by and through its agents, employees, and/or representatives, negligently and carelessly maintained or caused to be maintained the second story balcony railing, so as to cause said area to be unreasonably dangerous to individuals such as The Decedent; and,

i. Defendant Ginger C by and through its agents, employees, and/or representatives, negligently and carelessly failed to inspect said area for hazardous conditions where it knew or in the exercise of ordinary care should have known, that such conditions greatly increase the risk that persons, including The Decedent, would fall.

47. The negligence of Defendant Ginger C as set forth herein, directly caused the death of Jack Lipp on December 25th, 2014 and caused his pain and suffering and personal injury just prior to his death.

48. Had death not ensued, The Decedent would have been entitled to recover damages from Defendant Ginger C.

49. Defendant Ginger C negligence, as set forth herein, particularly the failure to return to the property and make promised additional repairs after the lessees informed him that the railing remained insecure, demonstrated willful misconduct, wantonness, and/or recklessness, and as such, Defendant Ginger C's negligence may be considered by the jury in this case in assessing punitive and/or aggravating damages against Ginger C pursuant to RSMo § 537.090.

50. By reason of the foregoing premises, Plaintiffs have been damaged and are entitled to recover fair and just damages under and pursuant to Section 537.090, RSMo, for the pecuniary losses suffered by the reason of the death of Jack Lipp, funeral expenses, and the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training, and support Plaintiffs have been deprived of by reason of Jack Lipp's death, together with any damages Jack Lipp may have suffered between the time of his injury and death as provided herein, which includes, but is not limited to, pain and suffering and emotional distress.

WHEREFORE, Plaintiffs pray for judgment against Defendant Ginger C in an amount that the trier of fact deems fair and reasonable, plus pre-judgment interest, if any, for Plaintiffs' expenses herein incurred, for punitive and/or aggravating damages pursuant to Section 537.090, RSMo, and for such other and further relief that the Court deems fair and reasonable under the circumstances.

## COUNT II –Negligence
### (Defendants Pi Kappa Phi National Headquarters and Pi Kappa Phi Missouri)

COME NOW Plaintiffs, by and through counsel, and for Count II of their cause of action against defendants Pi Kappa Phi National Headquarters and Missouri, state and aver to the Court as follows:

51. Plaintiffs incorporate herein by reference each and every allegation contained in the aforementioned paragraphs as if set forth herein at length and verbatim.

52. At all times herein mentioned and at the time of the incident, defendants Pi Kappa Phi were acting individually and through its respective members, officers, agents, employees, and/or representatives, each of whom were acting within the course and scope of their membership of Pi Kappa Phi, both nationally and localy.

53. Pi Kappa Phi National and Pi Kappa Phi Missouri are both vicariously liable for the acts of their members, officers, agents, employees, and/or representatives as discussed herein.

54. On December 12th, 2014, defendants Pi Kappa Phi held a fraternity sanctioned "rush party" at the property where it provided alcohol to rush attendees and also an environment of alcohol abuse and destruction.

55. In holding a sanctioned fraternity event at the property, defendants Pi Kappa Phi took on the duties of a tenant, namely to ensure the premises were free of any dangerous defects, and to protect and warn the tenants and the tenants guests of any known dangers, to fix any dangerous conditions of the property within a reasonable time frame, and to provide an atmosphere where alcohol was used in moderation and in conformance with the:

   a. Pi Kappa Phi Philosophy of the Organization Regarding Alcohol;
   b. Pi Kappa Phi Risk Management Policy as Adopted November 2013;
   c. Pi Kappa Phi Alcohol Education Exercises & Activities;
   d. Pi Kappa Phi BYOB Checklist;
   e. Pi Kappa Phi 2014 Risk Management Goals;
   f. Pi Kappa Phi Risk Reduction Checklist; and
   g. Pi Kappa Phi Sober Monitor & Sober Officer Resource Guide.

56. Defendants Pi Kappa Phi were aware of the dangerous condition of the wooden railing and the second story deck.

57. On December 13th, 2014, Jack Lipp was a guest of the lessees and was lawfully on the Subject Property as an "invitee" for the Pi Kappa Phi "rush party", and leaned against the wooden railing which collapsed causing Lipp to fall from the second story balcony onto the paved driveway below.

58. The fall of Jack Lipp, his resulting injuries, and his eventual and untimely death were the direct and proximate result of the negligent acts or omissions of defendants Pi Kappa Phi by and through its members, officers, agents, employees, and/or representatives, in one or more of the following particulars, to wit:

    a. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, negligently failed to maintain the second story balcony railing in a manner allowing for its safe use by lessees and their invited guests;

    b. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, failed and omitted to warn invitees such as The Decedent of the potential dangers and hazard and unstable condition of the second story balcony railing;

    c. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, failed to and omitted to warn The Decedent of the dangerous condition of the second story balcony railing;

    d. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, failed to inspect the second story balcony railing so as to

discover and correct the unreasonably dangerous condition that was not open and obvious to invitees such as The Decedent;

e. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, failed to properly use caution signs to inform invitees that the second story balcony railing was insecure;

f. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, failed to warn of a dangerous condition on the premises which was known, or in the exercise of ordinary care should have been known, by Defendant Ginger C but would not be expected to be observed by invitees on the premises, namely that the second story balcony railing was insecure;

g. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, permitted and allowed said premises to become and remain in a negligent, defective, and unreasonably dangerous condition;

h. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, negligently and carelessly maintained or caused to be maintained the second story balcony railing, so as to cause said area to be unreasonably dangerous to individuals such as The Decedent; and,

i. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, negligently and carelessly failed to inspect said area for hazardous conditions where it knew or in the exercise of ordinary care should have known, that such conditions greatly increase the risk that persons, including The Decedent, would fall.

j. Defendants Pi Kappa Phi by and through its agents, employees, and/or representatives, negligently and carelessly provided a "rush party" where alcohol was consumed in excess, the property was destroyed, and general mayhem ensued.

59. The negligence of Defendants Pi Kappa Phi as set forth herein, directly caused the death of Jack Lipp on December 25th, 2014 and caused his pain and suffering and personal injury just prior to his death.

60. Had death not ensued, The Decedent would have been entitled to recover damages from Defendants Pi Kappa Phi.

61. Defendants Pi Kappa Phis' negligence, as set forth herein, particularly the failure to secure the second story deck after it was known that the railing remained insecure, demonstrated willful misconduct, wantonness, and/or recklessness, and as such, Defendant Defendants Pi Kappa Phis' negligence may be considered by the jury in this case in assessing punitive and/or aggravating damages against Ginger C pursuant to RSMo § 537.090.

62. By reason of the foregoing premises, Plaintiffs have been damaged and are entitled to recover fair and just damages under and pursuant to Section 537.090, RSMo, for the pecuniary losses suffered by the reason of the death of Jack Lipp, funeral expenses, and the reasonable value of the services, companionship, comfort, instruction, guidance, counsel, training, and support Plaintiffs have been deprived of by reason of Jack Lipp's death, together with any damages Jack Lipp may have suffered between the time of his injury and death as provided herein, which includes, but is not limited to, pain and suffering and emotional distress.

WHEREFORE, Plaintiffs pray for judgment against Defendants Pi Kappa Phi in an amount that the trier of fact deems fair and reasonable, plus pre-judgment interest, if any, for

14

Plaintiffs' expenses herein incurred, for punitive and/or aggravating damages pursuant to Section 537.090, RSMo, and for such other and further relief that the Court deems fair and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues set forth above and herein in the Petition.

THE A.W. SMITH LAW FIRM, P.C.


    /s/ A.W. Smith
Aaron Widel Smith, MO Bar # 54137
The A.W. Smith Law Firm
2100 West Broadway
Columbia, Missouri 65203
(573) 777-3333 office
(573) 443-7301 fax
aw@awsmithlaw.com

ATTORNEY FOR PLAINTIFFS