**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

JOHN P. LIPP and STEPHANIE S.
LIPP,

          Plaintiffs,

v.

GINGER C, L.L.C., *et al.*,

          Defendants.

)
)
)
)
)
)
)
)
)

Case No. 2:15-cv-04257-NKL

## ORDER

Plaintiffs, the surviving parents of Jack Lipp, filed suit under Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080, alleging negligence against Defendants Ginger C, L.L.C., American Campus Communities (ACC),[1] Pi Kappa Phi Fraternity, Inc. (PKP National), and Pi Kappa Phi Fraternity Missouri Beta Epsilon Chapter (PKP Chapter). Before the Court are the following motions:

- Ginger C's Motion for Judgment on the Pleadings [Doc. 79]

- ACC's Motion to Dismiss [Docs. 46, 54, 81]

- The PKP Defendants' Motion to Dismiss [Doc. 43]

- Plaintiffs' Motion to Substitute [Doc. 39]

---

[1] Plaintiffs originally filed suit against Defendant ACC OP (Turner Avenue), L.L.C. In their Second Amended Complaint, Plaintiffs added claims against the following parties: ACC OP Development, L.L.C. (a Delaware Limited Liability Company), American Campus Communities Inc. (a Maryland Real Estate Investment Trust), American Campus Communities Operating Partnership, L.P. (a Maryland Limited Partnership), and American Campus Communities Holdings, L.L.C. (a Maryland Limited Liability Company). Collectively, for present purposes, the Court will refer to these entities as "Defendant ACC."

- Plaintiffs' Motions for Leave to File Amended Complaint [Docs. 72, 89, 129]

For the reasons discussed below, Ginger C's Motion for Judgment on the Pleadings and ACC's Motion to Dismiss are denied. PKP's Motion to Dismiss is granted. However, with regards to the premise liability claim alleged against PKP Chapter, Plaintiffs' Motion to Substitute is granted, and Plaintiffs may assert this claim against Scott Swafford, representative of the unincorporated association PKP Chapter. Plaintiffs' Motion for Leave to File Fourth Amended Complaint is granted for the purposes of (1) adding factual allegations against Roland Management, L.L.C., including allegations that apply to other defendants and (2) substituting Scott Swafford in place of PKP Chapter. Plaintiffs' other motions to amend are denied as moot.

## I. Background[2]

On December 12, 2014, Lukas Reichert, the rush chairman of PKP Chapter, asked Michael Novak, Christopher Strzalka, and Charlie Smith to host a PKP "rush party" at the residence they were renting, a structure at 507 South Fourth Street in Columbia, Missouri. This party was designed to recruit freshmen students at the University of Missouri into the chapter. Novak, Strzalka, and Smith—all members of PKP Chapter—agreed to host the event.

---

[2] These facts appear in Plaintiffs' Second Amended Complaint. [Doc. 64]. For purposes of deciding the Defendants' motions to dismiss, the Court accepts Plaintiffs' factual allegations as true and construes them in the light most favorable to Plaintiffs. *See Stodghill v. Wellston Sch. Dist.,* 512 F.3d 472, 476 (8th Cir. 2008).

Two days later, on the night of December 14, over 100 people attended the rush party at 507 South Fourth Street, which grew out of control due to an atmosphere of alcohol abuse. Jack Lipp arrived at this party around 1:15 a.m the following morning. At some point in the next hour, Lipp went onto a second-floor deck on the south side of the property, where he stood on a wooden balcony in order to urinate onto the driveway below. Columbia Police believe party attendees had been urinating off the deck throughout the night due to long bathroom lines inside the house. While he was on the deck, the wooden balcony broke, causing Lipp to fall 18 feet to the driveway. Lipp died on December 25, 2014 as a result of his injuries.

The balcony had been temporarily repaired by a prior owner of the property with unpainted wooden boards. At the time of Lipp's injury, 507 South Fourth Street was owned by Ginger C, which had an agreement with ACC to redevelop the property. ACC planned to remove the existing structure on the premises to make room for a large student apartment complex, and to this end ACC financed Ginger C's purchase of the property. However, in the spring and summer of 2014, the Columbia City Council repeatedly tabled its consideration of ACC's proposed project. The existing structure was leased in August 2014 to Novak, Strzalka, and Smith for the upcoming school year.

In October 2014, Ginger C inspected the property and was aware of the defective balcony. ACC also inspected the property around this time and was also aware of the defective balcony. While Michael Novak's mother complained to Ginger C about the balcony's temporary repair job, Ginger C did not make any repairs because the property was still scheduled for demolition.

Plaintiffs filed this suit on November 9, 2015. Their Second Amended Complaint contains four counts of negligence, one each against Ginger C, ACC, PKP Chapter, and PKP National.

## II.    Discussion

When considering a motion to dismiss, a court asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when its allegations rise above the "speculative" or "conceivable," *Twombly*, 550 U.S. at 547, and "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Such a complaint will be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). Likewise, a court will apply this same standard to a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Ashley County v. Pfizer*, 552 F.3d 659, 665 (8th Cir. 2009).

The Defendants argue that Plaintiffs have not sufficiently pled the negligence claims against them. Crucially, in their motions, all the Defendants contend that they did not exercise control over the defective balcony such that the law imposes upon them a duty to inspect, correct, or warn of this defect. Because these claims all involve an alleged dangerous condition on a property, they are properly considered under the

framework of premise liability. *Cossey v. Air Systems Intern., Inc.,* 273 S.W.3d 588, 590 (Mo. Ct. App. 2009).

To maintain a premise liability claim, Plaintiffs must establish that (1) the Defendants were "possessors" of the property at 507 South Fourth Street, *Adams v. Badgett,* 114 S.W.3d 432, 436 (Mo. Ct. App. 2003), and (2) that each owed Lipp a duty of care, *Woodall v. Christian Hosp. NE-NW*, 473 S.W.3d 649, 653 (Mo. Ct. App. 2015). "Generally, the status of an entrant on the land, i.e., whether the entrant is a trespasser, licensee, or an invitee, determines the specific duty of care owed by the possessor of land." *Medley v. Joyce Meyer Ministries, Inc.*, 460 S.W.3d 490, 495-96 (Mo. Ct. App. 2015).

Plaintiffs allege that Lipp attended the PKP rush party as a guest, and therefore that he entered the property as an invitee. The PKP Defendants, however, urge the Court to consider Lipp a licensee because Plaintiffs have not established that Lipp, by his mere presence at the party, had been invited "with the expectation of a material benefit" and thus moved from a licensee to an invitee. *See Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. banc 1995).

The Court need not presently resolve this issue because it has no bearing on the Defendants' motions to dismiss. If Lipp was an invitee, he was owed a duty if the possessor "kn[ew] [about the dangerous condition] or by the exercise of reasonable care would discover the condition." *Medley*, 460 S.W.3d at 496. If Lipp was a licensee, he was owed a duty "to make safe dangers of which the possessor [was] aware." *Carter*, 896 S.W.2d at 928. Because Plaintiffs allege that all the Defendants were aware of the

defective balcony, *see* [Doc. 64, pp. 6, 19, 11, ¶¶ 32, 62, 90], each Defendant owed Lipp a duty of care if it possessed the property at the time of the injury, regardless of his exact status as an entrant.

Further, as examined below, Plaintiffs have sufficiently alleged in their Second Amended Complaint that Ginger C, ACC, and PKP Chapter possessed the property at the time of Lipp's injury. Plaintiffs have since filed a Third Amended Complaint that adds claims against Roland Management, L.L.C. [Doc. 125]. Plaintiffs have also sought leave to file a Fourth Amended Complaint, [Doc. 129], arguing that they should be permitted to add facts regarding Roland Management that also pertain to other defendants' control of the property. ACC and Ginger C have consented to this motion.

For several reasons, the Court finds "good cause" to grant Plaintiffs' Motion for Leave to File Fourth Amended Complaint. Fed.R.Civ.P. 16(b)(4). First, in light of the complex relationship between the parties in this case and the extensive discovery undertaken to identify several of these parties, the uncontested addition of Roland Management necessarily requires Plaintiffs to allege added facts against several defendants. Second, as explained below, the Defendants are not prejudiced because even under their Second Amended Complaint, Plaintiffs have stated premise liability claims against ACC, Ginger C, and PKP Chapter. *See Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992) (leave to amend should be freely granted where, among other factors, there is no "undue prejudice to the non-moving party"). Third, the Court's Amended Scheduling

Order [Doc. 33] still provides the parties sufficient time to complete discovery and file dispositive motions.[3]

Accordingly, within seven days of the date of this order, Plaintiffs are granted leave to file a Fourth Amended Complaint containing factual allegations against Roland Management that also apply to other defendants. Plaintiffs are also granted leave to substitute Scott Swafford as representative of PKP Chapter, for the reasons discussed below. No further amendments will be granted absent extraordinary circumstances.

However, as also discussed below, Plaintiffs have not alleged a claim against PKP National in any complaint. They further have not alleged a negligence claim against PKP Chapter stemming from PKP Chapter's failure to train, failure to follow fraternity policy, or provision of alcohol at the rush party. These claims are dismissed with prejudice.

### A. Defendant Ginger C

The parties agree that Ginger C owned the property at 507 South Fourth Street at the time of Lipp's injury. Ginger C argues, however, that it is entitled landlord immunity and cannot be held liable for a defective condition on the premises—the wooden balcony—of which its tenants were aware. Under Missouri law, if a tenant is in control of the property, the landlord generally "is not liable for personal injury caused by a dangerous condition of the premises." *Caples v. Earthgrains Co.*, 43 S.W.3d 444, 449

---

[3] Plaintiffs have asked the Court to amend the scheduling order, *see* [Doc. 129], and Ginger C and ACC have consented to this request, [Doc. 136]. However, aside from Plaintiffs' motion to file an amended complaint and Ginger C and ACC's request for an opportunity to respond to this amended complaint within twenty days, the parties have not explained how they otherwise want the Scheduling Order amended. Accordingly, the Court is granting Plaintiffs' motion to amend and the Defendants a 20-day opportunity to respond. The parties may file within 10 days a separate motion if they otherwise seek to amend the Scheduling Order.

(Mo. Ct. App. 2001). Yet this doctrine of landlord immunity contains several recognized exceptions, including an exception where "the injury occurs in an area over which the landlord retains actual control." *Lammert v. Lesco Auto Sales*, 936 S.W.2d 846, 849 (Mo. Ct. App. 1996).

To satisfy this exception, a plaintiff must establish that the "[d]efendant retained sufficient control necessary to establish liability based upon a duty to repair." *Stephenson v. Countryside Townhomes, LLC*, 437 S.W.3d 380, 384-85 (Mo. Ct. App. 2014). Whether the landlord's control is "sufficient" is a matter of degree: while a landlord's right to enter the premises is alone insufficient to render her liable, the exception applies when a plaintiff offers "some additional fact or facts from which a jury could infer that under the agreement the tenant gave up and surrendered his right to exclusive possession and control and yielded to the landlord some degree or measure of control and dominion over the premises." *Lemm v. Gould*, 425 S.W.2d 190, 195 (Mo. 1968). These facts can be circumstantial. *Peterson v. Brune*, 273 S.W.2d 278, 281 (Mo. 1954).

Ginger C argues that Plaintiffs have alleged no facts demonstrating Ginger C's actual control over the balcony. However, in their Second Amended Complaint, Plaintiffs allege that Ginger C had a right to control the premises. *See* [Doc. 64, p. 5, ¶ 18]. Plaintiffs further allege that Michael Novak's mother complained to Ginger C "on multiple occasions" about the defective balcony, but Ginger C "did not make any additional repairs" because the property was scheduled to be demolished. [Doc. 64, p. 6, ¶¶ 31-32]. From these allegations, a jury could infer that Ginger C had actual control over the balcony to make repairs, and the tenants' recourse was to complain to Ginger C

about the defect. But Ginger C did not make the repairs, not because of lack of control but because Ginger C intended to demolish the building. Because a landlord's control is a question of fact, *Frazier v. Riggle*, 844 S.W.2d 71, 73 (Mo. Ct. App. 1992), these allegations are sufficient to survive a motion for judgment on the pleadings.

Ginger C alternatively argues that Plaintiffs must show a contractual obligation on Ginger C's part to repair the defective balcony. Ginger C relies on *Stephenson v. Countryside Townhomes*, which suggests that to fall within the exception, a plaintiff must allege that the landlord retains control *and* that he is contractually-obligated to perform the repairs. *Stephenson*, 437 S.W.3d at 384. However, a separate line of cases indicates that a plaintiff need not satisfy both of these elements. *See Caples*, 43 S.W.3d at 451 ("Generally, the landlord is under no obligation to the tenant to repair unless there is a contract creating a duty to repair. . . Where the landlord retains partial control over the leased premises for the purpose of making repairs, however, the landlord is then obligated to make such repairs and to keep the premises in a reasonably safe condition for the intended use."). The Court will adhere to this majority view, which considers the dispositive question in the inquiry "whether the landlord did retain control of the particular portion of the premises under consideration." *Dean v. Gruber*, 978 S.W.2d 501, 504 (Mo. Ct. App. 1998) (*quoting Tucker v. Taksel*, 345 S.W.2d 385, 387 (Mo. Ct. App. 1961)). As discussed above, this is a question of fact, not appropriately resolved at this stage of the litigation.

Ginger C's Motion for Judgment on the Pleadings is denied.

**B. Defendant ACC**

ACC argues it cannot be held liable in negligence for a defect on a property it did not own or control. Although Plaintiffs, in their Second Amended Complaint, agree that ACC did not own the property at 507 South Fourth Street, they maintain ACC "took on the duties of a property owner," and shared an "understanding [with Ginger C] that each had a right of control." [Doc. 64, p. 10, ¶¶ 60, 61].

ACC owed a duty to Lipp if it possessed the property at the time of his injury. *See Adams*, 114 S.W.3d at 436. Missouri has adopted the Restatement (Second) of Torts, which defines the term "possessor" as a party "who is in occupation of the land with intent to control it." Restatement (Second) of Torts § 328E(a). Per that definition, a party may still possess property it does not own. *Bowman v. McDonald's Corp.*, 916 S.W.2d 270, 285 (Mo. Ct. App. 1995), *overruled on other grounds by Richardson v. QuikTrip Corp.*, 81 S.W.3d 54 (Mo. Ct. App. 2002) ("Ownership is not a requirement for possession of the land in order to establish liability under section[ ] 328E."). Plaintiffs can thus maintain their claim against ACC if they have alleged ACC controlled 507 South Fourth Street. *See Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 63 (Mo. 1988) (finding a factual issue as to whether the defendant controlled a parking lot; plaintiffs properly pleaded the defendant controlled the lot, despite not owning it).

While Plaintiffs have made such allegations, ACC dismisses them as conclusory, arguing that Plaintiffs' Second Amended Complaint lacks sufficient factual support to show ACC actually exercised control over the property. Yet a plaintiff does not need to offer comprehensive facts to survive a motion to dismiss. Rather, the plaintiff merely

must allege "enough facts" to plausibly state a claim for relief. *Twombly*, 550 U.S. at 570.

Plaintiffs' Second Amended Complaint exceeds this threshold by offering facts, if taken as true, that tend to show ACC exercised actual control over the property. Plaintiffs allege that ACC performed inspections of the property, financed its purchase, joined Ginger C's insurance contract, and notably, served as a "de facto" owner alongside Ginger C by "continu[ing] to collect rent." [Doc. 64, p. 10, ¶ 61]. In sum, these facts plausibly support Plaintiffs' theory that ACC, the company planning to redevelop the property, exercised control by financing its purchase and then overseeing its interim management. *See Lemm*, 425 S.W.2d at 198 (affirming a jury verdict because, in part, the jury could reasonably find the defendant controlled a property he did not own when he continued to collect rent).

ACC argues that the exhibits attached to Plaintiffs' Second Amended Complaint, [Docs. 64-1-64-15], fail to support—and in fact counter—any allegation that ACC exerted control over the property. Having examined these exhibits, the Court finds they neither prove nor disprove Plaintiffs' allegations. Accordingly, Plaintiffs' allegations are accepted as true for purposes of this motion to dismiss. *See Hagen v. McDonald's Corp.*, 231 S.W.3d 858, 861 (Mo. Ct. App. 2007) (denying summary judgment where the affidavit cited by the defendant did not conclusively establish whether it controlled the premises in question). Under Federal Rule of Civil Procedure 11, Plaintiffs' counsel must "certify[y] to the best of [their] knowledge" that "the factual contentions [in the complaint] have evidentiary support." Fed.R.Civ.P. 11(b), 11(b)(3). The Court declines

to question Plaintiffs' factual contentions by demanding added support at this stage of the litigation.

Plaintiffs have sufficiently alleged premise liability against ACC to survive a motion to dismiss.[4]

### C. Defendant PKP Chapter

As an initial matter, the parties agree that PKP Chapter is not a legal entity, and so PKP's Motion to Dismiss is granted to the extent it addresses Plaintiffs' negligence claims against PKP Chapter as the named party. Plaintiffs have requested leave to substitute Defendant PKP Chapter for Scott Swafford, its advisor, as representative of PKP Chapter as an unincorporated association. Motions for leave to substitute may be freely granted when they are sought in good faith, are not futile, and are not prejudicial to the non-moving party. *See Becker v. Univ. of Nebraska*, 191 F.3d 904, 907-08 (8th Cir. 1999). PKP Chapter does not argue it would be prejudiced by a substitution at this point in the litigation. In order to determine whether Plaintiffs' proposed substitution would be futile, the Court must consider two questions: (1) whether Plaintiffs can maintain a suit against PKP Chapter as an unincorporated association, and (2) if they can, whether Plaintiffs' allegations have stated a claim for relief against PKP Chapter in whatever legal form.

### 1. Suing PKP Chapter as an Unincorporated Association

The parties disagree whether PKP Chapter can be sued as an unincorporated association. Under Federal Rule of Civil Procedure 17(b), "a partnership or other

---

[4]     In light of this finding, the Court will not address the parties' agency arguments at this time.

unincorporated association with no such capacity [to be sued] under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Therefore, because neither party argues that Plaintiffs' negligence claim enforces a substantive federal right, the Court must first determine whether Missouri law permits suits against unincorporated associations. In Missouri, "[a]bsent a statute, an unincorporated association must be sued by means of a class action." *State ex rel. Auto. Club Inter–Insurance Exch. v. Gaertner,* 636 S.W.2d 68, 70 (Mo. banc 1982). Stated otherwise, unless a statute permits lawsuits against the unincorporated association at issue—an option neither party claims here—"an unincorporated association possesses no status apart from its members and is not a legal entity." *Cent. Cty. Emergency 911 v. Int'l Ass'n of Fire Fighters Local 2665*, 937 S.W.2d 371, 372 (Mo. Ct. App. 1996). PKP Chapter accordingly cannot be sued under Rule 17(b).

However, in cases where Rule 17(b) cannot apply, Rule 23.2 permits suit "against the members of an unincorporated association as a class by naming certain members as representative parties." Fed.R.Civ.P. 23.2. *See also* Advisory Notes Fed.R.Civ.P. 23.2 (clarifying that the rule applies "when for formal reasons [an association] cannot sue or be sued as a jural person under Rule 17(b)"). Although it thus provides unincorporated associations legal status "as a class," Rule 23.2 is not intended to track the requirements of a class action under Rule 23. *See Gay Lib v. Univ. of Missouri*, 416 F. Supp. 1350, 1360 (W.D. Mo. 1976), *reversed on other grounds*, 558 F.2d 848 (8th Cir. 1977) ("Defendants' argument in terms of numerosity misconstrues the nature of plaintiffs'

proposed class action, however, for plaintiffs seek to proceed under the Rule 23.2 procedure for actions relating to unincorporated associations. . . [A] showing of numerosity is not required under Rule 23.2."). *See also* Advisory Notes Fed. R. Civ. P. 23.2 ("Although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give "entity treatment" to the association.").

Instead, Rule 23.2 merely requires that "it appears that [the representative] parties will fairly and adequately protect the interests of the association and its members." Fed.R.Civ.P. 23.2. In their motion to substitute, Plaintiffs seek to name Scott Swafford as the representative party.[5] Plaintiffs maintain that Swafford will adequately protect the interests of PKP Chapter and its members.

PKP Chapter disagrees, arguing that a representative's interests would be "antagonistic to [those of PKP Chapter's] absent members." [Doc. 57, p. 2] (*quoting Firefighters Local No. 77 v. City of St. Joseph, Mo.*, 822 S.W.2d 866, 870 (Mo. Ct. App. 1991)). Specifically, PKP Chapter argues that the chapter members who were renting the property at 507 South Fourth Street likely do not share the same interests as the remaining members, and consequently Swafford cannot adequately represent PKP Chapter as a whole. Yet the property's tenants are not separately listed as parties to this litigation. Moreover, Plaintiffs have alleged liability against PKP Chapter without

---

[5]     Plaintiffs originally sought to substitute Michael Ciffone, the president of PKP Chapter. In their Motion for Leave to File Fourth Amended Complaint, however, Plaintiffs state that they seek instead to substitute Scott Swafford because counsel for the PKP Defendants has informed them that Ciffone "had a conflict." *See* [Doc. 129, p. 6]. Regardless of whether Ciffone or Swafford is being substituted, the Court's analysis of the substitution remains unchanged.

differentiating among any of its members. It therefore appears Swafford can adequately protect the interests of PKP Chapter and all its members in this litigation.[6]

PKP Chapter alternatively argues it should not even be considered an unincorporated association because it surrendered its charter to PKP National in December 2015 and therefore no longer exists as an organization. PKP Chapter agrees only that it was an unincorporated association prior to December 2015, which presumably includes the time of Lipp's injury in December 2014.

In a similar lawsuit against a fraternity chapter, the Delaware Supreme Court has noted that "when the unincorporated entity no longer exists there must be an end to the authority of its former officers to represent it." *Furek v. Univ. of Delaware*, 594 A.2d 506, 514 (Del. 1991). However, unlike a dissolved corporation, an unincorporated association can disband and reactivate through simple, informal processes. *Washington Pension Union v. Subversive Activities Control Bd.*, 322 F.2d 398, 400 (D.C. Cir. 1963). Plaintiffs have argued that PKP Chapter operates as an unincorporated association—an allegation sufficient at this stage of the litigation. While PKP Chapter has submitted the declaration of Justin Angotti, an employee of PKP National, which states that PKP Chapter surrendered its charter on December 10, 2015, [Doc. 57, p. 6], the lack of a charter does not necessarily render an unincorporated association disbanded. *See Hecht*

---

[6] PKP Chapter similarly argues that Plaintiffs have "failed to plead requisite facts" to establish that a representative can adequately protect the interests of the chapter's members. [Doc. 57, p. 2]. However, the Court does not understand Rule 23.2 to set the pleading bar PKP Chapter envisions. Per its language, a suit can be maintained against an unincorporated association when "it appears" that the representative party will adequately protect the interests of the association and its other members. Fed.R.Civ.P. 23.2. Plaintiffs' negligence claim against PKP Chapter does not differentiate between its members, as discussed above. Accordingly, "it appears" that Swafford can adequately serve as a representative party. No additional factual information is needed to buttress this conclusion.

*v. Malley,* 265 U.S. 144, 157 (1924) (defining an unincorporated organization as "a body of persons united *without a charter*, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise") (emphasis added).

As such, the Court finds persuasive *Krueger v. Fraternity of Phi Gamma Delta, Inc.*, 2001 WL 1334996, at *6 (Mass. Super. May 18, 2001), a case where the plaintiff also alleged negligence against a national and local fraternity. The *Krueger* plaintiff attempted to serve several chapter members as representatives of the chapter, an unincorporated organization. The defendants filed a motion to dismiss, arguing that the chapter had disbanded since the alleged negligent incident and thus could no longer be sued under Massachusetts Rule of Civil Procedure 23.2, which largely mirrors the federal rule. The court disagreed. It remarked:

> While this may prove to be a winning argument at a later stage in the proceedings, it is not ground for dismissal. Defendants' argument depends on their assertion that [the chapter], the alleged unincorporated association at issue, had disbanded and that the defendants no longer held any offices or had any authority in the association at the time process was served. While subsequent evidence may prove the truth of this assertion, it is not apparent on the face of the complaint. Accordingly, the court will not consider it at this time.

*Id.*

The Court agrees with this reasoning. At this stage of the litigation, Plaintiffs can maintain a suit against PKP Chapter as an unincorporated association.

### 2. Plaintiffs' Allegations Against PKP Chapter

Plaintiffs' Second Amended Complaint alleges that PKP Chapter held a sanctioned rush party at the property on the night of Lipp's injury, and that, in doing so, it

"took on the duties of a tenant," [Doc. 64, p. 19, ¶ 89], and had a duty to maintain the balcony and warn partygoers of its defective condition. PKP Chapter argues it had no such duty because it did not become a possessor of the property merely by holding a party on the premises.

In support of its argument, PKP Chapter relies on *Ostrander v. Duggan*, 341 F.3d 745 (8th Cir. 2003). In *Ostranger*, the plaintiff was sexually assaulted on a property adjacent to a fraternity house that was leased by fraternity members. The Eighth Circuit, applying Missouri law, noted that the property was owned and managed by third parties, that the fraternity was not referenced in the lease, and that, although the fraternity had considered purchasing the property, it had never done so. The Eighth Circuit thus concluded "the evidence does not demonstrate [the fraternity] policed or in any way controlled the [property], legally or factually." *Ostrander*, 341 F.3d at 748-49 (8th Cir. 2003). PKP Chapter maintains *Ostrander* is analogous to Lipp's case. Plaintiffs disagree, emphasizing that *Ostrander* involved a sexual assault and should not be applied to a premise liability suit.

While *Ostrander*'s relevant discussion still addresses the core issue of the parties' premise liability dispute—whether a fraternity can control a property it does not own— *Ostrander* was decided on summary judgment, where the Eighth Circuit found that "the evidence" does not demonstrate control, "legally *or factually*." *Id*. (emphasis added). In doing so, the *Ostrander* court indicated there was no evidence of control, but it did not foreclose the possibility that a fraternity, under different factual circumstances, may incur liability for controlling a property even without owning it.

Unlike in *Ostrander*, the Court is presently deciding a motion to dismiss, and therefore it is not in a position to conclude what the evidence in this case does or does not show. Instead, the Court must merely ask whether Plaintiffs have alleged PKP Chapter sufficiently controlled the property on the night of Lipp's injury to the degree it became a possessor. More instructive to this inquiry is *Medley v. Joyce Meyer Ministries*, a case where the Missouri Court of Appeals found that the defendant, a religious organization, controlled a temporary display area built in a convention hall it did not own. The court reached this conclusion after establishing that "[a] party exercises its control over the premises when, inter alia, (1) it exercises its right to direct the use of the premises; or (2) it exercises its right to admit people to the premises and exclude people from it." *Medley*, 460 S.W.3d at 499-500. Applying this rule, the *Medley* court concluded that the defendant directed the use of the premises by placing its display area upon it. The defendant further exercised its right to admit and exclude people, the court found, because it stationed employees at the entrance of the display for purposes of crowd control. *Id.* at 500.

Likewise, in Lipp's case, Plaintiffs have sufficiently alleged the two criteria for possession found dispositive in *Medley*. First, Plaintiffs allege that PKP Chapter directed the use of the property by requesting its tenants to hold a chapter party upon it. [Doc. 64, p. 7, ¶ 33]. Second, Plaintiffs allege PKP Chapter exercised its right to admit and exclude people by making this party a "rush party" intended for "rush attendees." [Doc. 64, p. 19, ¶ 88]. At this stage in the litigation, these allegations are sufficient to state a

claim for premise liability by asserting PKP Chapter controlled the property on the night of Lipp's injury. *See Madden*, 758 S.W.2d at 63.

Plaintiffs also assert that PKP Chapter provided alcohol at the party, fueling an atmosphere of excessive drinking in violation of PKP National's alcohol policy. To the extent Plaintiffs are alleging that PKP Chapter contributed to Lipp's injury by negligently providing alcohol to party attendees, this claim must fail because Missouri courts have expressly rejected this theory of social host liability. *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547, 553 (Mo. 1987) (finding that fraternity chapter was not liable for injuries that resulted after it furnished alcohol to individuals under twenty-one years old). *See also Roe v. Saint Louis Univ.*, 2012 WL 5377895, at *3 (E.D. Mo. Oct. 31, 2012).[7]

PKP's Motion to Dismiss is therefore granted as to Defendant PKP Chapter. Nevertheless, because Plaintiffs can state a premise liability claim against PKP Chapter as an unincorporated association, Plaintiffs' Motion to Substitute is granted as well. Plaintiffs may plead their premise liability claim against Scott Swafford as representative of PKP Chapter.

### D. PKP National

In their Second Amended Complaint, Plaintiffs assert the same claims against PKP National as against PKP Chapter: negligence under a theory of premise liability and

---

[7]    Plaintiffs' proposed Fourth Amended Complaint also alleges that PKP Chapter failed to properly train the tenants at 507 South Fourth Street and failed to follow policies established by PKP National. Even assuming these allegations are distinct from Plaintiffs' theories of premise and alcohol liability, they still cannot survive a motion to dismiss for the reasons indicated in the Court's discussion of PKP National below. As with PKP National, Plaintiffs have not alleged that PKP Chapter owed a duty of care to Lipp outside of the premise liability context.

negligence for holding a party where alcohol was consumed in excess. In their briefing, however, Plaintiffs clarify they are also asserting claims against PKP National for negligent supervision and training.[8] These claims are more expressly stated in Plaintiffs' proposed Fourth Amended Complaint, which Plaintiffs have requested leave to file. PKP National argues that the Court should dismiss all claims alleged against it.

Having considered Plaintiffs' proposed Fourth Amended Complaint, the Court finds, for the reasons set forth below, that Plaintiffs have not stated a negligence claim against PKP National under either their present or their proposed complaint.

### 1. Premise Liability

As with PKP Chapter, PKP National had a duty to warn Lipp about known dangers if it "possessed" the property at the time of Lipp's injury. Unlike in PKP Chapter's case, however, Plaintiffs have not offered any allegations that PKP National controlled the property at 507 South Fourth Street.

Plaintiffs also have not asserted PKP National controlled PKP Chapter such that it can be held vicariously liable for PKP Chapter's alleged negligence. When deciding whether to assess liability against a national fraternity for injuries stemming from chapter events, the Missouri Supreme Court has asked whether the national fraternity

---

[8]     Plaintiffs also briefly mention that "PKP National is liable under the theor[y] of negligent . . . retention." [Doc. 60, p. 4]. A claim for negligent retention contains the same elements as a claim for negligent hiring. *Lonero v. Dillick*, 208 S.W.3d 323, 329 (Mo. Ct. App. 2006). Therefore, "[t]o sustain a claim based on the theory of negligent hiring and retention, the plaintiff must plead and prove that an employer-employee relationship existed." *Storey v. RGIS Inventory Specialists, LLC*, 466 S.W.3d 650, 657 (Mo. Ct. App. 2015). Plaintiffs have not alleged any such relationship in their Second Amended Complaint or proposed Fourth Amended Complaint.

"participate[d] in the day-to-day management of its chapters." *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547, 553 (Mo. 1987).

In an effort to satisfy this standard, Plaintiffs offer only the conclusory allegation that "PKP National actually asserted supervision and control over the day-to-day functions of [PKP Chapter]." [Doc. 129-1, p. 33, ¶ 149]. This threadbare recital is insufficient to carry Plaintiffs' negligence claim. Nowhere in Plaintiffs' complaints is there any factual content from which the Court can reasonably infer that PKP National participated in the daily operation of PKP Chapter. *Iqbal*, 556 U.S. at 678. In fact, in their proposed Fourth Amended Complaint, Plaintiffs repeatedly stress that PKP Chapter violated policies adopted by PKP National, held a fraternity party despite being suspended from campus, and promoted at this fraternity party a scene of "general mayhem." *See* [Doc. 129-1, p. 41, ¶ 175]. These allegations do not describe a chapter over which PKP National exercised active control. *See Wilson v. St. Louis Area Council, Boy Scouts of Am.*, 845 S.W.2d 568, 570-71 (Mo. Ct. App. 1992) (finding no vicarious liability because defendant did not authorize, know about, or direct the activity in question).

Plaintiffs cannot maintain a premise liability claim against PKP National.

### 2. Negligent Supervision

To state a prima facie case of negligent supervision, a plaintiff must plead "(1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or

property." *Cook v. Smith*, 33 S.W.3d 548, 553-54 (Mo. Ct. App. 2000). The first element—a legal duty to protect the plaintiff—is narrowly defined under Missouri law. This duty "runs not to an activity, but rather to an individual," *Bequette v. Buff,* 862 S.W.2d 921, 924 (Mo. Ct. App. 1993), and so plaintiffs must allege "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care," *Hill ex rel. Hill v. Herbert Hoover Boys Club,* 990 S.W.2d 19, 22 (Mo. Ct. App. 1999).

Missouri courts have found that such duty arises in the context of an employer-employee relationship where the employee acts outside the scope of her employment, *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. Ct. App. 2000); in a school setting where teachers owe a duty to supervise their students, *Smith v. Archbishop of St. Louis*, 632 S.W.2d 516, 521-22 (Mo. Ct. App. 1982); and when a defendant "accept[s] the custody and control of a minor child," *Hill ex rel. Hill*, 990 S.W.2d at 22.

In alleging negligent supervision against PKP National, Plaintiffs do not align their claim with any of these negligent supervision cases. Instead, Plaintiffs propose only the conclusory allegation that "PKP National had a duty to exercise reasonable care for the safety of its local chapter's social invitees." [Doc 129-1, p. 33, ¶ 150]. This statement fails to identify a duty recognized by Missouri law. It also conflicts with "the wealth of case law [in other jurisdictions] standing for the proposition that a national fraternity does not assume a general duty to protect local fraternity chapters or their members." *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 510-11 (Ind. Ct. App. 2015) (citing cases). *See also Grenier v. Comm'r of Transp.*, 51 A.3d 367, 380 (Conn. 2012)

(rejecting the argument that there exists a "common-law duty of care in organizing and conducting fraternity events").

Consistent with these persuasive authorities, the Court declines to create a generalized duty of the type Plaintiffs envision. Therefore, they cannot maintain a claim for negligent supervision.

### 3. Negligent Training

Plaintiffs also claim that PKP National had a duty to educate its local chapters in risk management, alcohol policy, and the responsibilities owed to guests at an off-campus site. Plaintiffs allege this duty stems from the FIPG Risk Management Manual, a risk-prevention policy guide that has been adopted by PKP National. "By adopting the FIPG Risk Management Manual," Plaintiffs argue, "PKP National has set their own standard for duties owed to local chapters and the communities those chapters exist within to ensure that fraternal functions operate in a safe manner and do not needlessly endanger the individual members, their neighbors, or their guests." [Doc. 129-1, pp. 33-34, ¶ 151].

Yet a policy manual does not necessarily give rise to a duty of care. *See Robinson v. St. John's Med. Ctr., Joplin*, 508 S.W.2d 7, 13 (Mo. Ct. App. 1974); *Norton v. Smith*, 782 S.W.2d 775, 777-78 (Mo. Ct. App. 1989). "The question of whether a duty exists depends upon a calculus of policy considerations." *Miles ex rel. Miles v. Rich*, 347 S.W.3d 477, 483 (Mo. Ct. App. 2011) (*quoting Lough v. Rolla Women's Clinic,* 866 S.W.2d 851, 854 (Mo. banc 1993)) (internal quotation marks omitted). Plaintiffs have not shown or alleged that as a matter of policy, a risk management manual creates a duty

of care owed to social guests.  *See Meyer*, 31 N.E.3d at 510-11 (rejecting the argument that the FIPG manual created a "duty to inform and guide" the local chapter).

Thus PKP National's adoption of the FIPG manual did not, absent some other obligation, create a duty owed to a guest like Lipp to train its chapters in the manual's policies.  Likewise, PKP National's adoption of an alcohol policy did not give rise to a duty to train PKP Chapter on Lipp's behalf.  *See Coghlan v. Beta Theta Pi Fraternity*, 987 P.2d 300, 313 (Idaho 1999) (sorority alcohol policy did not create an affirmative duty to monitor the drinking activities of its members).

Consequently, Plaintiffs have failed to allege a negligence claim against PKP National under any complaint.  PKP's Motion to Dismiss is granted as to PKP National.


## III.    Conclusion

For the foregoing reasons, the Court orders as follows:


- Defendant Ginger C's Motion for Judgment on the Pleadings [Doc. 79] is denied.
- Defendant ACC's Motion to Dismiss [Docs. 46, 54, 81] is denied.
- Defendant PKP's Motion to Dismiss [Doc. 43] is granted.  However, with regards to the premise liability claim alleged against PKP Chapter, Plaintiffs' Motion to Substitute [Doc. 39] is granted, and Plaintiffs may assert this claim against Scott Swafford, representative of the unincorporated association PKP Chapter.
- Plaintiffs' Motion for Leave to File Fourth Amended Complaint [Doc. 129] is granted for the purposes of (1) adding factual allegations against Roland Management, including allegations that apply to other defendants and (2) substituting Scott Swafford in place of PKP Chapter.  Plaintiffs shall file this

complaint within seven (7) days of the date of this order. Plaintiffs' other motions for leave to amend [Docs. 72, 89] are denied as moot. No further amendments will be granted absent extraordinary circumstances.


                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge

Dated:  April 19, 2016
Jefferson City, Missouri