IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JOHN P. LIPP, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 2:15-cv-04257-NKL |
| | ) | |
| GINGER C, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO RECONSIDER DISMISSAL OF DEFENDANT PKP NATIONAL WITH SUGGESTIONS IN SUPPORT, AND; RENEWED MOTION FOR LEAVE TO AMEND SO THAT JUSTICE MAY BE SERVED**

COME NOW Plaintiffs, by and through their attorney, and for their Motion to Reconsider Dismissal of Defendant PKP National, and; Renewed Motion for Leave to Amend so that Justice May be Served, and in furtherance thereof, state as follows:

**Relevant Procedural History**

1. On February 29th, 2016, plaintiffs' filed a Motion for Leave to Amend the Complaint against defendant PKP National.

2. On March 30th, 2016, plaintiffs filed Additional Suggestions in Support of its Motion for Leave to Amend the Complaint against defendant PKP National, citing the recent case of *Brown v. Delta Tau Delta*, 118 A.3d 789 (Me.Sup.Ct. 2015)[1].

3. On April 19th, 2016, this Court entered its Order dismissing defendant PKP National from the lawsuit with prejudice, stating:

---

[1] Holding that the National Delta Tau Delta fraternity had a duty to exercise reasonable care for the safety of its local chapter's social invitees as element of invitee's premises liability action, where National Fraternity exercised control over the local chapter's day-to day activities and the mechanism of injury was foreseeable.

1

a. "Plaintiffs have not offered any allegations that PKP National controlled the property at 507 S. Fourth Street", and;

b. "Plaintiffs have not asserted PKP National controlled PKP Chapter such that it can be held vicariously liable for PKP Chapter's alleged negligence", and;

c. "Plaintiffs offer only the conclusory allegation that PKP Nation actually asserted supervision and control over the day-to-day functions of PKP Chapter.

4. However Plaintiffs' Proposed Fourth Amended Complaint makes the following allegations against PKP National:

a. "Defendant Pi Kappa Phi National had a right to control access to the dangerous area and did in fact control access to the dangerous area, albeit in an insufficient and negligent manner". *See* [Doc. 129-1, p. 30, ¶ 139].

b. "PKP National and PKP Missouri are both vicariously liable for the acts of their members, officers, agents, employees, and/or representatives as discussed herein". *See* [Doc. 129-1, p. 29, ¶ 134].

c. "PKP National failed to educate the local chapters in its own risk management policy, PKP National failed to responsibly supervise the local chapters to ensure the dictates of the FIPG were followed, PKP National failed to order the cessation of fraternal activities when blatant disregard of internal policies on safety were flaunted, PKP National knew or should have known that its local chapter at the University of Missouri was hosting fraternity functions at 507 S. 4th Street in Columbia, Missouri, PKP National knew or should have known that by having fraternity functions at 507 S. 4th Street, a location technically off-campus, that this permitted its local chapter to host parties where alcohol was

present but forbidden under the rules and regulations of PKP National, PKP National knew or should have known that by having a fraternity house off campus that it permitted its local chapter to host parties that were outside the jurisdiction of the University of Missouri's Inter Fraternity Council and the frequent inspections conducted by that governing body, PKP National knew or should have known that its members of the local fraternity was hosting fraternity "rush parties" while intoxicated, resulting in the failure of the members to abide by the national policies, PKP National failed to exercise reasonable care for the safety of its local Chapter's social invitees during functions sponsored by the local chapter, for the benefit of PKP National. *See* [Doc. 129-1, pp. 35-36, ¶ 157, a-h].

**Authority**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Also, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Leave to amend should be granted liberally when "justice so requires." *Williams v. Town of Okoboji,* 606 F.2d 812, 814 (8th Cir.1979). Although the district court's decision to permit amendment is discretionary, *id.,* we will reverse a denial of such permission when the plaintiff has shown it can cure the lack of specificity. *See id.; accord Colburn v. Upper Darby Township,* 838 F.2d at 666.

**Argument**

The 1980's era of laissez faire governance by national fraternities has almost completely eroded in favor of a system of complete and total domination over local chapters. *See Brown v. Delta Tau Delta*, 118 A.3d 789 (Me.Sup.Ct. 2015)[2]. The Missouri Supreme Court case cited by this Court and defendant PKP National, *Andres v. Alpha Kappa Lamda*, 730 S.W.2d 547 (Mo.banc.1987), is law from a different era. During that time period, national fraternities commonly did not participate in the day-to-day management of local chapters. Now, national fraternities like PKP, assert a very high degree of control over the day-to-day activities of its local chapters. It is this degree of control over its local chapter, and the foreseeability of harm that caused this death, that created a duty of care for PKP National under Missouri Law.

"The duty to exercise care may be a duty imposed by common law under the circumstances of a given case." *Hoover's Dairy, Inc. v. Mid–Am. Dairymen, Inc./Special Prods., Inc.,* 700 S.W.2d 426, 431 (Mo.1985) (quoting *Zuber v. Clarkson Constr. Co.,* 363 Mo. 352, 251 S.W.2d 52, 55 (1952)). The extent of a duty "is generally measured by 'whether or not a reasonably prudent person would have anticipated danger and provided against it.' " *Id.* (quoting *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo.1976)). The "paramount factor" in determining whether

---

[2] In this case, the evidence showed that DTD had the authority to control its individual members, and actually did so through implementation and enforcement of its rules and regulations. DTD also had a close, integrated relationship with Gamma Nu, as demonstrated by DTD's corporate structure with chapter advisors.

4

a duty exists is the foreseeability that some injury might result. *Id.* Whether the defendant "should have foreseen a risk in a given set of circumstances" depends on whether there was "some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it." *Lopez,* 26 S.W.3d at 156.

However, "Foreseeability alone is not enough to establish a duty." *Stitt ex rel. Stitt v. Raytown Sports Ass'n,* 961 S.W.2d 927, 930 (Mo.Ct.App.1998). "There must also be "some right or obligation to control the activity which presents the danger of injury." *Id.* "The National did not participate in the day-to-day management of its chapters and thus was more remote than the Local from the events surrounding the death of respondents' son (and therefore owed no duty of care). *Andres v. Alpha Kappa Lamda*, 730 S.W.2d 547 (Mo.banc.1987). However in the matter at hand, PKP National did in fact, participate in the management of the local chapter at the University of Missouri. It therefore had a duty under Missouri law to exercise reasonable care.

On March 1st, 2016, plaintiffs deposed PKP National's "Director of Prevention Education". During that deposition it became clear that PKP National was providing financial resources to, imposing risk management standards on, maintaining supervisory and enforcement authority over its local chapter and the individual members at the University of Missouri. PKP National also conducted leadership training and regulated member conduct of the local chapter through rules and regulations, including those related to the use of alcohol, including those related to events outside of the chapter house, and perhaps more importantly, falls from heights. Additionally, National PKP was aware of recent problems with its local chapter at the University of Missouri, and even had regular chapter advisers monitoring the group.

The Plaintiffs' Proposed Fourth Amended Complaint, states:

134. PKP National and PKP Missouri are both vicariously liable for the acts of their members, officers, agents, employees, and/or representatives as discussed herein.

139. Defendant Pi Kappa Phi National had a right to control access to the dangerous area and did in fact control access to the dangerous area, albeit in an insufficient and negligent manner.

143. PKP National, pursuant to its own policies, rules, and regulations, undertook a duty and obligation to educate, train, test, guide and supervise the members and activities of its local chapters throughout the United States.

144. PKP National was responsible for ensuring the local chapter understood responsibilities owed to the members and the guests of members if PKP Chapter intended to continue Fraternity functions, particularly when considering the "relocation" to off-campus sites.

145. PKP National had the duty to instruct PKP local Chapters to cease all fraternal functions until such time as the fraternity had its on-campus status reinstated.

146. PKP National had a duty to train PKP Chapter in proper risk prevention in compliance with FIPG Risk Management Manual which addresses in-depth risk anticipation, prevention, and instruction.

147. PKP National had a duty to suspend PKP local Chapter in the event of open sanctions violations.

148. PKP National had a duty to supervise and control the day-to-day functions of PKP local Chapter, especially since the PKP local Chapter had recent open sanction violations and since the chapter was about to lose its on-campus housing.

149. PKP National actually asserted supervision and control over the day-to-day functions of PKP local Chapter.

150. PKP National had a duty to exercise reasonable care for the safety of its local chapter's social invitees during functions sponsored by the local chapter, especially since the PKP local Chapter had recent open sanction violations and since the chapter had lost its on-campus housing.

156. The fall of Jack Lipp, his resulting injuries, and his eventual and untimely death were the direct and proximate result of the negligent acts or omissions of defendants Pi Kappa Phi National by and through its members, officers, agents, employees, and/or representatives, in one or more of the following particulars, to wit:
    a. PKP National failed to educate the local chapters in its own risk management policy.
    b. PKP National failed to responsibly supervise the local chapters to ensure the dictates of the FIPG were followed.
    c. PKP National failed to order the cessation of fraternal activities when blatant disregard of internal policies on safety were flaunted.
    d. PKP National knew or should have known that its local chapter at the University of Missouri was hosting fraternity functions at 507 S. 4th Street in Columbia, Missouri.
    e. PKP National knew or should have known that by having fraternity functions at 507 S. 4th Street, a location technically off-campus, that this permitted its local chapter to host parties where alcohol was present but forbidden under the rules and regulations of PKP National.
    f. PKP National knew or should have known that by having a fraternity house off campus that it permitted its local chapter to host parties that were outside the jurisdiction of the University of Missouri's Inter Fraternity Council and the frequent inspections conducted by that governing body.
    g. PKP National knew or should have known that its members of the local fraternity was hosting fraternity "rush parties" while intoxicated, resulting in the failure of the members to abide by the national policies.
    h. PKP National failed to exercise reasonable care for the safety of its local Chapter's social invitees during functions sponsored by the local chapter, for the benefit of PKP National.

PKP National also trained and required its members to adhere to the National's policies of hosting social events with alcohol away from the chapter house. PKP National trained and required its members to know that "fall from heights" is the leading cause of loss driving claim severity for the national fraternity as a whole. PKP National cannot legitimately say that the mechanism of injury which caused the decedent's death, was not foreseeable.

**Alternative Release Requested**

This Court has permitted the filing of a Fourth Amended Complaint, due next week, with permission to change the allegations against the remaining defendants. However plaintiffs have not been permitted to amend the Complaint, even once, for the allegations against PKP National. At a minimum, plaintiffs should be allowed one last opportunity to amend the allegations against PKP National, in order to flesh out the allegations even more than they already are pled. Plaintiffs incorporate herein the arguments and authorities set forth in their Motion for Leave to file Fourth Amended Complaint, discussing the intentional delays caused by PKP National, and the diligence of the plaintiffs in attempting to meet the current Scheduling Order.

**Conclusion**

Under Missouri law, PKP National owed decedent a duty of care *if* it managed and controlled the day-to-day activities of PKP Chapter at University of Missouri. Plaintiffs have clearly pled that PKP National owed the decedent a duty of care, that the duty was breached, and that it caused or contributed to cause the decedent's death. Furthermore, plaintiffs have pled significantly more facts than the threadbare recital that "PKP National actually asserted supervision and control over the day-to-day functions of PKP Chapter". Plaintiffs can add additional facts, if necessary. PKP National should be held accountable for its misconduct that contributed to cause the death of the decedent.

WHEREFORE, Plaintiffs respectfully request that this Court enter its order GRANTING Plaintiffs' Motion to Reconsider Dismissal of PKP National from this lawsuit, and for any other and further relief this Court deems just and proper in the circumstances.

Respectfully submitted,

THE A.W. SMITH LAW FIRM, P.C.

s/ *Aaron Widel Smith*
Aaron W. Smith, #54137
2100 W. Broadway
Columbia, MO 65203
573-777-3333 phone
573-443-7301 fax
aw@awsmithlaw.com

HORN AYLWARD & BANDY, LLC

s/ *Robert A. Horn*
Robert A. Horn, #28176
2600 Grand Blvd. Suite 1100
Kanas City, MO 64108
Columbia, MO 65203
816-421-0700 phone
816-421-0899 fax
rhorn@hab-law.com

s/ *Joseph A. Kronawitter*
Joseph A. Kronawitter, #49280
2600 Grand Blvd. Suite 1100
Kanas City, MO 64108
Columbia, MO 65203
816-421-0700 phone
816-421-0899 fax
jkronawwitter@hab-law.com

ATTORNEY FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 20th day of April, 2016 copies of the foregoing documents were sent by electronic filing to:

Jeffrey H. Blaylock
Clayton Thompson
Ford, Parshall & Baker, L.L.C.

Mitchell Zoll
James Ewbank
Cokinos, Bosien & Young

John Roark
Smith Lewis, LLP

John G. Schultz
Jacqueline Annette Cook
Franke Schultz & Mullen, P.C.

Jack Bangert
Kutak Rock, LLP

                  s/ *Aaron Widel Smith*