IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN P. LIPP and STEPHANIE S. LIPP, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:15-cv-04257-NKL ) ) |
| GINGER C, L.L.C., *et al.*, | ) ) |
| Defendants. | ) ) |

**ORDER**

Before the Court is Plaintiffs' Motion to Reconsider Dismissal of Defendant Pi Kappa Phi National Fraternity [Doc. 148]. For the following reasons, the motion is denied.

**I.    Background**

Plaintiffs, the surviving parents of Jack Lipp, filed suit under Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080, alleging negligence against Defendants Ginger C, L.L.C., American Campus Communities (ACC), Pi Kappa Phi Fraternity, Inc. (PKP National), and Pi Kappa Phi Fraternity Missouri Beta Epsilon Chapter (PKP Chapter). The suit stems from Lipp's death, which occurred when he fell off a balcony at 507 South Fourth Street in Columbia, Missouri while attending a fraternity party allegedly hosted by PKP Chapter, the local chapter of PKP National.

In their Second Amended Complaint, Plaintiffs alleged negligence against PKP National under theories of premise and vicarious liability. In their proposed Fourth Amended Complaint, Plaintiffs further asserted claims against PKP National for negligent supervision, training, and retention. On January 28, 2016, PKP National filed a motion to dismiss. [Doc. 43]. Plaintiffs argued in response that they had sufficiently pled their negligence claims, or, in the alternative, that they should be granted leave to file their proposed Fourth Amended Complaint.

In an order entered on April 19, 2015, the Court dismissed all pending and proposed claims against PKP National. [Doc. 144]. The Court dismissed the premise liability claim because "Plaintiffs have not offered any allegations that PKP National controlled the property at 507 South Fourth Street." *Id*. at 20. The Court further found that Plaintiffs had not alleged PKP National controlled PKP Chapter such that it could be held vicariously liable for PKP Chapter's alleged premise liability or provision of alcohol at the party. The Court wrote:

> When deciding whether to assess liability against a national fraternity for injuries stemming from chapter events, the Missouri Supreme Court has asked whether the national fraternity "participate[d] in the day-to-day management of its chapters." *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547, 553 (Mo. 1987).
>
> In an effort to satisfy this standard, Plaintiffs offer only the conclusory allegation that "PKP National actually asserted supervision and control over the day-to-day functions of [PKP Chapter]." [Doc. 129-1, p. 33, ¶ 149]. This threadbare recital is insufficient to carry Plaintiffs' negligence claim. Nowhere in Plaintiffs' complaints is there any factual content from which the Court can reasonably infer that PKP National participated in the daily operation of PKP Chapter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

> (2009). In fact, in their proposed Fourth Amended Complaint, Plaintiffs repeatedly stress that PKP Chapter violated policies adopted by PKP National, held a fraternity party despite being suspended from campus, and promoted at this fraternity party a scene of "general mayhem." *See* [Doc. 129-1, p. 41, ¶ 175]. These allegations do not describe a chapter over which PKP National exercised active control.

[Doc. 144, pp. 20-21].

Additionally, the Court dismissed the negligent supervision, training, and retention claims. Regarding the supervision and training claims, the Court found that Plaintiffs had not alleged a duty recognized by law that PKP National owed to Jack Lipp. As to the negligent retention claim, the Court found Plaintiffs did not plead the existence of an employer-employee relationship.

Consequently, the Court dismissed PKP National from this suit and denied as futile Plaintiffs' request to file the added allegations against PKP National contained in their proposed Fourth Amended Complaint. Plaintiffs' Motion to Reconsider followed.

**II.    Discussion**

A motion to reconsider serves the limited purpose of "correct[ing] manifest errors of law or fact or [presenting] newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413 (8th Cir. 1998). Therefore, a motion to reconsider is proper when addressing errors in the underlying order or offering evidence that was not previously available. It is not proper as a "vehicle simply to reargue the case." *Fongwo*

*v. Gonzales*, 430 F.3d 944, 948 (8th Cir. 2005).[1] "A district court has broad discretion to reconsider an order granting dismissal." *In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987, 993 (8th Cir. 2006).

Plaintiffs argue that the Court should reconsider its dismissal of PKP National. First, Plaintiffs maintain that their proposed Fourth Amended Complaint sufficiently sets forth plausible negligence claims against PKP National. Second, in the alternative, Plaintiffs argue they should be granted leave to file an amended complaint that contains added factual allegations against PKP National, including facts recently ascertained in discovery. The Court addresses each argument in turn.

### A. The Court's Order of Dismissal

In their motion, Plaintiffs contend they have pled that "PKP National actually asserted supervision and control over the day-to-day functions of PKP Chapter." [Doc. 148, p. 8]. In making this argument, Plaintiffs appear to challenge the Court's dismissal of their vicarious liability claim asserted against PKP National.

Yet neither Plaintiffs' Motion to Reconsider [Doc. 148] nor Additional Suggestions in Support [Doc. 149] offer any arguments the Court has not already considered and dismissed. Plaintiffs first argue that *Andres v. Alpha Kappa Lambda*

---

[1] The Court notes that "[t]he Federal Rules of Civil Procedure do not provide for a "motion to reconsider."" *Humphreys v. Roche Biomedical Labs., Inc.*, 990 F.2d 1078, 1081 (8th Cir. 1993). Consequently, when a party files a motion of this nature without tying it to a federal rule, a court may "deny what amounts to a motion to reconsider because it is procedurally improper." *Carroll v. Sisco*, 2007 WL 1594051, at *1 (E.D. Mo. May 30, 2007). A court may also construe the motion as procedurally-compliant under Rules 52, 59, or 60. *See Humphreys*, 990 F.2d at 1081; *In re Trout*, 984 F.2d 977, 978 (8th Cir. 1993) ("While we were able to construe the trustee's motion as one that comports with the Federal Rules of Civil Procedure in this particular situation, we warn counsel of the danger of failing to follow and to cite the appropriate procedural rule in the first instance."). For present purposes, the Court merely observes that Plaintiffs have not stated any grounds to reconsider the Court's dismissal of PKP National, regardless of how such motion is construed.

*Fraternity*, the case relied upon by the Court in its supervisor liability analysis, is "law from a different era." [Doc. 148, p. 4]. Regardless of the year it was decided, however, *Andres* remains valid Missouri law. Plaintiffs do not suggest otherwise. While they have cited a more recent case from another jurisdiction, the Court is obligated to apply Missouri substantive law in this diversity suit. *See In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987, 993 (8th Cir. 2006) (a district court properly denied a motion to reconsider where the moving party relied on non-controlling cases).

In fact, despite dismissing *Andres* as "old," Plaintiffs proceed to apply its standard nevertheless. Pointing to their proposed Fourth Amended Complaint, Plaintiffs argue they have pled sufficient facts establishing that PKP National participated in the day-to-day management of PKP Chapter. *See Andres*, 730 S.W.2d at 553 (asking whether the national fraternity "participate[d] in the day-to-day management of its chapters"). The Court has already considered this argument as well. In its order, the Court examined Plaintiffs' proposed Fourth Amended Complaint and concluded that it lacked "any factual content from which the Court [could] reasonably infer that PKP National participated in the daily operation of PKP Chapter." [Doc. 144, p. 21].

Plaintiffs do not offer any new reasons to challenge this conclusion.[2] Instead, they merely restate a series of allegations made against PKP Chapter in their proposed Fourth

---

[2] In their reply brief, however, Plaintiffs also argue that "failure to act is just as meaningful, in terms of "participating" in the day-to-day management of the chapter, as affirmative conduct. In other words, Plaintiffs allege that PKP National had a role in the day-to-day activities of the local chapter (i.e., it was "participating"), and its failure to properly fulfill that role is what caused, or contributed to cause, Jack Lipp's death." [Doc. 162, p. 8]. In making this argument, Plaintiffs appear to claim that PKP National did not participate in PKP Chapter's daily management—but that they *should* have participated because they had a duty to participate. This circular argument is unpersuasive. While parties, in some

5

Amended Complaint. After removing all legal conclusions from these allegations, *see Iqbal*, 556 U.S. at 678, the Court finds only three possible facts asserted by Plaintiffs: (1) "PKP National actually asserted supervision and control over the day-to-day functions of PKP Chapter;" (2) PKP Chapter "had recent open sanctions violations," "had lost its on-campus housing," and "was hosting fraternity functions at 507 South Fourth Street;" and (3) PKP National had adopted an FIPG Risk Management Manual. [Doc. 148, pp. 6-7].

The Court has already found these allegations deficient. First, Plaintiffs' claim that PKP National actually asserted supervision is conclusory absent some additional support. Second, facts alleged about PKP Chapter—especially facts suggesting PKP Chapter was noncompliant with university or fraternity policies—do not indicate PKP National's day-to-day participation in these functions. Third, as discussed in the Court's prior order, PKP National did not assume a duty to Lipp merely by adopting the FIPG Risk Management Manual. While the Court must accept Plaintiffs' allegations as true when considering a motion to dismiss, these allegations must still be supported by some factual content. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts highlighted in Plaintiffs' motion do not satisfy this low bar.

In their reply brief, Plaintiffs also dispute PKP National's assertion that "Plaintiffs have abandoned their 'direct negligence claims' (i.e., premises liability and negligent supervision, training and retention claims) and only seek reconsideration of their vicarious liability claim." [Doc. 162, p. 3]. Rather, according to Plaintiffs, they are

---

contexts, are placed under an affirmative duty to act, this duty must first be established. The lack of a relationship between two parties does not create a duty for one to act on behalf of the other. As such, Plaintiffs' argument only lends credence to the Court's conclusion that they have not alleged PKP National's vicarious liability under the standard set forth in *Andres*.

seeking "reconsideration of the Court's order dismissing <u>all</u> of their claims against PKP National, or leave to amend <u>all</u> of their claims against PKP National." *Id*. (emphasis in original). Yet the Court finds that Plaintiffs did not raise this broad challenge in either their Motion to Reconsider or Additional Suggestions in Support, both of which focus on PKP National's control of PKP Chapter and thus appear only to address the vicarious liability claim. Plainly, despite filing two documents supporting their motion to reconsider, Plaintiffs did not put the Defendants on notice that they intended to address the direct premise liability claim or the negligent supervision, training, and retention claims.

Even if these issues are properly before the Court, however, Plaintiffs still have not shown that PKP National owed Lipp a duty regarding any of these claims and, therefore, that the Court erred in dismissing them. The Court will briefly address the points raised by Plaintiffs in their reply brief.

### 1. Direct Premise Liability

Plaintiffs argue that the Court applied an incorrect standard in dismissing their direct premise liability claim. They assert:

> [T]he Court dismissed the premises liability claim because it believed Plaintiffs "have not offered any allegations that PKP National controlled the property." But, the Missouri case relied upon by PKP National for this issue states that the question is not whether the national fraternity "controlled" the chapter's activities, but whether the national fraternity "**participate[d]** in the day-to-day management of its chapters."

[Doc. 162, p. 5] (*quoting Andres*, 730 S.W.2d at 553) (emphasis in original).

7

In making this argument, Plaintiffs have confused the standards between a direct premise liability claim and a vicarious liability claim conditioned on a local chapter's premise liability. Under the first claim, a party is liable for injuries suffered on a property only if it possessed that property at the time of injury. *Adams v. Badgett*, 114 S.W.3d 432, 436 (Mo. Ct. App. 2003). Missouri has adopted the Restatement (Second) of Torts, which defines the term "possessor" as a party "who is in occupation of the land with intent to control it." Restatement (Second) of Torts § 328E(a).

In none of Plaintiffs' complaints or briefings is there any suggestion that PKP National occupied 507 South Fourth Street with the intent to control it. Accordingly, the Court properly dismissed Plaintiffs' direct premise liability claim.

### 2. Negligent Supervision

Regarding their negligent supervision claim, Plaintiffs argue:

> [T]he Court held that Plaintiffs need only "<u>allege</u>" 'the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care," but nevertheless found that Plaintiffs had failed to adequately allege such a duty. However, Plaintiffs plead specific facts demonstrating that PKP National undertook a duty to, and did, supervise the local chapter. Moreover, the existence of a duty is determined by considering whether the risk of injury to a certain person or class of persons was the foreseeable result of careless conduct by the defendant. . . PKP National had specific knowledge that 'fall from heights' was a leading cause of loss and a driver of claim severity against college fraternities.

[Doc. 162, p. 6] (emphasis in original).

The Court has already addressed this argument in its prior order. While foreseeability is the "paramount" factor in assessing a party's duty of care, *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 156 (Mo. 2000), "[f]oreseeability alone is not

enough to establish a duty," *Pippin v. Hill-Rom Co.*, 615 F.3d 886, 890 (8th Cir. 2010) (*quoting Stitt by Stitt v. Raytown Sports Ass'n, Inc.*, 961 S.W.2d 927, 930 (Mo. Ct. App. 1998)). Plaintiffs argue that Lipp's injury was foreseeable, but even if so, Plaintiffs concede that negligent supervision also requires "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." *Hill ex rel. Hill v. Herbert Hoover Boys Club*, 990 S.W.2d 19, 22 (Mo. Ct. App. 1999). This relationship is critical to establish because "[t]he duty to supervise is a narrow one." *Id.*

Again, Plaintiffs have not shown, in any of their complaints or briefings, the existence of a relationship between PKP National and Lipp recognized by Missouri law. Missouri courts have found that certain persons—for example, grandparents, teachers, and babysitters—owe a duty to supervise, *A.R.H. v. W.H.S.*, 876 S.W.2d 687, 689 (Mo. Ct. App. 1994) (citing cases), but no court has extended this duty to national fraternities. Plaintiffs have not offered even a colorable argument for such extension.

### 3. Negligent Training

Plaintiffs also argue that the Court erred in dismissing their negligent training claim. Plaintiffs state:

> The Court found the negligent training claim failed because Plaintiffs had not "shown or <u>alleged</u> that PKP National's risk policies created a duty, and that there was no duty of care owed to "social guests" like Jack Lipp. But Jack Lipp was not a "social guest." Plaintiffs alleged him to be an invitee at the premises at the request of the fraternity and the direction of PKP National. As an invitee, Jack Lipp was owed a duty.

[Doc. 162, p. 7] (emphasis added).

Contrary to Plaintiffs' assertion, a person's entrance status upon a property is a question of law, and therefore the Court is not obligated to accept as true Plaintiffs' allegation that Lipp was an invitee. *See Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. 1995). But even assuming Lipp was an invitee, this status pertains only to the Defendants' premise liability. *See Medley v. Joyce Meyer Ministries, Inc.*, 460 S.W.3d 490, 495-96 (Mo. Ct. App. 2015) ("Generally, the status of an entrant on the land, i.e., whether the entrant is a trespasser, licensee, or an invitee, determines the specific duty of care owed by the possessor of land."). Whether Lipp was a licensee or invitee at 507 South Fourth Street has no bearing on Plaintiffs' negligent training claim because, as explained above, Plaintiffs have not alleged that PKP National possessed the property. Rather, the dispositive question is whether PKP National owed a duty to Lipp to train PKP Chapter on his behalf.

Plaintiffs have not established that PKP National owed such a duty. In its order, the Court found that PKP National's adoption of a risk management manual did not create a duty of care owed to Lipp. Plaintiffs have offered no other theory in their motion to reconsider.

### 4. Negligent Retention

Although Plaintiffs also seek reconsideration of their negligent retention claim, they have offered no argument challenging the Court's dismissal of it. "To sustain a claim based on the theory of negligent hiring and retention, the plaintiff must plead and prove that an employer-employee relationship existed." *Storey v. RGIS Inventory Specialists, LLC*, 466 S.W.3d 650, 657 (Mo. Ct. App. 2015). Plaintiffs have not shown,

in any of their complaints or briefings, the existence of an employer-employee relationship in this case.

Accordingly, Plaintiffs have not offered a persuasive basis to reconsider any of their negligence claims against PKP National.

**B. Leave to File an Amended Complaint**

In the alternative, Plaintiffs seek leave to file an amended complaint that augments their claims against PKP National. In their Additional Suggestions in Support, moreover, Plaintiffs offer several new facts disclosed recently during discovery. Plaintiffs argue that these facts support their request to amend.

When a plaintiff requests leave to amend his complaint, "[t]he court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). Yet this liberal allowance is not a mandatory right. "[P]ermission to amend may be withheld if the plaintiff . . . is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994).

Further, "[a]lthough a pretrial motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed after dismissal." *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir. 1985). "After a complaint is dismissed, the right to amend under Fed.R.Civ.P. 15(a) terminates." *Id*. A party may still seek leave to amend its complaint, but "such a motion would be inappropriate if the court has clearly indicated . . . that no amendment is possible." *Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1050 (8th Cir. 2010).

In its order dismissing PKP National and granting Plaintiffs leave to amend other sections of their complaint, the Court did not fully foreclose the possibility of a future amendment. The Court stated, however, that "[n]o further amendments will be granted absent extraordinary circumstances." [Doc. 144, p. 7].

Having examined Plaintiffs' new factual allegations, the Court finds they present no extraordinary circumstances justifying an amendment. Plaintiffs now seek to allege that PKP Chapter paid fees to PKP National, that PKP National asked PKP Chapter in September 2014 to prepare a recruitment program, and that PKP Chapter sent a one-page "Recruitment Plan" in response to this request. *See* [Docs. 149-1, 149-2]. These facts, if true, do not constitute extraordinary new evidence demanding the Court's reconsideration of its dismissal order. Indeed, Plaintiffs do not even argue why these facts show PKP National's day-to-day participation in PKP Chapter, for purposes of the vicarious liability claim—or why they show PKP National owed a duty to Lipp for purposes of the negligent training and supervision claims. In discussing these facts, Plaintiffs merely contend that the one-page Recruitment Plan, which was not fully responsive to PKP National's request, "should have immediately triggered PKP National to further supervise and control its local chapter." [Doc. 149, p. 3]. Plaintiffs cite no authority for why PKP Chapter's poor recruitment plan renders PKP National liable under any theory of negligence.

Moreover, considering the procedural history of this case, justice does not require granting Plaintiffs an opportunity to amend their claims against PKP National. This lawsuit was filed on November 9, 2015 and the parties began conducting discovery in

December 2015. Since then, Plaintiffs have filed three amended complaints, a proposed Fourth Amended Complaint, and a total of five requests seeking leave to amend their complaint. *See* [Docs. 60, 61, 72, 89, 129]. Plaintiffs are now requesting an additional amendment more than four months after the deadline set in the Court's Scheduling Order. *See* [Doc. 157]. *See also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (district court did not abuse its discretion in denying motion to amend filed five months after scheduling order deadline). Given that the trial date has already been postponed once, [Doc. 33], permitting Plaintiffs to repeatedly amend their deficient pleadings will serve only to prejudice the Defendants and further delay this litigation. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065-66 (8th Cir. 2005) (affirming denial of motion to amend because plaintiff had already filed two amended complaints and further amendments would prejudice defendant and delay the case).

Even so, despite the amendments already granted in this case, Plaintiffs argue they "have not been permitted to amend the Complaint, even once, for the allegations against PKP National." [Doc. 148, p. 8]. While the Court has not granted Plaintiffs leave to add factual allegations against PKP National, this is only because, in its prior order, the Court closely examined Plaintiffs' proposed Fourth Amended Complaint and found that the additional allegations asserted against PKP National were futile. Accordingly, the Court has already explained why Plaintiffs cannot amend their claims against PKP National. The Court declines to revisit this analysis.

Plaintiffs' request for leave to amend their complaint is denied.

## III. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Reconsideration [Doc. 148] is denied.

s/ Nanette K. Laughrey<br>NANETTE K. LAUGHREY<br>United States District Judge

Dated: June 8, 2016
Jefferson City, Missouri