IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN P. LIPP and STEPHANIE S. LIPP, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:15-cv-04257-NKL |
| | ) |
| GINGER C, L.L.C., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Before the Court is Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Comparative Fault Defense, [Doc. 375]. For the following reasons, Plaintiffs' Motion is denied.

**I. Background[1]**

Plaintiffs, the surviving parents of Jack Lipp, filed suit alleging negligence against Defendants Ginger C, L.L.C., American Campus Communities (ACC), and Roland Management. The suit stems from Lipp's death, which occurred after he fell off a balcony at 507 South Fourth Street in Columbia, Missouri while attending a fraternity party on December 12–13, 2014. Plaintiffs allege Jack Lipp fell because of a defective railing on the balcony.

Chris Strzalka lived at 507 South Fourth Street in the fall of 2014 with roommates Charlie Smith and Mike Novak, all of whom were affiliated with the Pi Kappa Phi fraternity. Lukas Reichert was Vice Archon of Recruitment for Pi Kappa Phi Fraternity in the fall of 2014.

---

[1] Unless otherwise noted, the facts recited are those which are properly supported and undisputed for the purpose of this Motion only.

Reichert spoke with tenants Mike Novak and Chris Strzalka about hosting the fraternity party at which Jack Lipp was injured.

There was a balcony on the second floor of the property that could only be accessed through Chris Strzalka's bedroom. The wooden door to the balcony had a lock on it which could be flipped or latched by hand. In September 2014, Derrow Properties LLLC owned the property at 507 South Fourth Street. One of Derrow's maintenance employees, Ryan Krueger, repaired the balcony railing in September 2014 after one of the tenants "kicked out" the balcony railing by bracing the existing portion of balcony railing with a 2 x 4 wooden plank. The railing repair was intended to be "temporary," and was not compliant with applicable City of Columbia building codes. Ginger C purchased the property from Derrow in October 2014 and there is no evidence that the balcony was repaired again after Ginger C's purchase.

A dispute remains regarding the status of the temporary balcony railing on the night of the party. When Jack Lipp was found on the ground under the balcony, pieces of the balcony railing were lying on the ground around him. Strzalka testified that the last time he saw the balcony railing "would have been probably the day of the party." [Doc. 396-2]. Tenant Michael Novak testified that the last time he saw the repaired balcony was "probably that day." [Doc. 396-3]. Even so, Defendants deny that the balcony railing was in place at the time of Jack Lipp's fall insofar as no witness can testify as to the condition of the railing at any point throughout the evening.

The tenants of 507 S. Fourth Street and Reichert spoke before the party of December 12-13, 2014 about preventing party attendees from accessing the second story balcony. Specifically, Novak told Reichert that he [Novak] had locked the door to the balcony to prevent people from getting out there. Strzalka testified that he shut the door to his bedroom on the night of the party

2

but allowed "people he knew" to enter his room and store coats or purses during the party. Strzalka also testified that he taped a warning on the door leading to the balcony, although the Police photographs submitted by Defendants show the door to the balcony was unlocked and do not show any warning sign. It is unclear from the evidence available whether the door was locked and whether any sign was visible.

Jack Lipp arrived at the party shortly after 11:00 p.m. Sometime between 1:00 and 1:30, student Scott Campbell walked out of Strzalka's bedroom and saw Jack Lipp walk into the bedroom.[2] No more than 15 minutes later, Campbell exited the party and saw Lipp lying on the driveway directly below the second story balcony. He was unconscious and bleeding from his head. On December 25, 2014, Lipp died from his injuries.

Plaintiffs' Fourth Amended Complaint alleges negligence against ACC Defendants, Ginger C, and Roland Management. [Doc. 191]. Ginger C's Answer contained the following affirmative defenses:

- "[I]f it is determined . . . that Plaintiffs' damages, if any, resulted in part from the negligence of Ginger C, Ginger C denying all negligence, then and in that event, Plaintiffs' damages should be reduced by that percentage of negligence of Plaintiffs' decedent that is determined to have caused or contributed to cause the damages of Plaintiffs as determined upon the comparison of the negligence of all parties causing or contributing to cause Plaintiffs' damages." [Doc. 201, p. 13]
- "Ginger C affirmatively states that Plaintiffs' damages, if any, were caused by Jack Lipp's failure to keep a careful lookout and observe both the edge of the balcony and the railing." *Id.* at 15.

ACC Defendants and Roland Management plead the same affirmative defense in their respective answers. *See* [Doc. 190, pp. 8–9]; [Docs. 199–204].

---

[2]  Defendants cite the testimony of Scott Campbell and Daniel Mikes, who offer personal observations as to whether Jack Lipp was intoxicated at the party in support of their comparative fault defense. Plaintiffs have filed a Motion in Limine asking the Court to exclude such evidence. *See* [Doc. 431]. This Order addresses' Plaintiffs' Motion for Partial Summary Judgment, which construes all facts in the light most favorable to Defendants for the purposes of this Motion only. Even so, because the Court denies Plaintiffs' Motion for Summary Judgment based on facts that do not pertain to Lipp's alleged intoxication, the Court will defer ruling on Plaintiffs' Motion in Limine for the purpose of this Order.

**II.     Discussion**

A motion for summary judgment "is appropriate when the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011) (citation omitted). The moving party bears the burden of establishing a lack of genuine issue of fact. *Brunsting v. Lutsen Mountains Corp.,* 601 F.3d 813, 820 (8th Cir. 2010). "Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party." *Smith v. Basin Park Hotel, Inc.*, 350 F.3d 810, 813 (8th Cir. 2003) (citation omitted). The Court must review the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from those facts. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Rule 56 Advisory Committee Note.

"Comparative fault is an affirmative defense." *Rill v. Trautman*, 950 F. Supp. 268, 272 (E.D. Mo. 1996). Affirmative defenses are assertions by a defendant raising new facts and arguments that, if true, will defeat a plaintiff's claim, and a defendant therefore bears the burden of proof at trial with respect to its affirmative defenses. *PNC Bank, Nat. Ass'n v. El Tovar, Inc.,* 2014 WL 538810, at *7–8 (E.D. Mo. Feb. 11, 2014). Under the pure comparative fault principles adopted by Missouri in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc. 1983), the injured party's own negligence is compared to that of the negligence of defendant to determine whether any damages awarded should be diminished in proportion to the amount of negligence attributable to that plaintiff. *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. banc. 1986).

Under Missouri's pure comparative fault system, the jury has the responsibility of

4

assessing the relative fault of the parties in a tort action. *Cox v. J.C. Penny*, 741 S.W. 2d 28, 30 (Mo. banc 1997). Fault is defined to include both "acts and omissions that are in any measure negligent or reckless" and also an "unreasonable failure to avoid an injury or to mitigate damages." UCFA § 1(b); *Naes v. Reinhold* Development Co., 950 S.W. 2d 681, 682-683 (Mo. Ct. App. 1997). Fault also includes avoidable consequences. *Love v. Park Lane Medical Center*, 737 S.W. 2d 720, 724 (Mo. banc 1987); *Naes*, 950 S.W. 2d at 683. "[W]here there is evidence that the conduct of both parties combined and contributed to cause damage, the fact finder should not be precluded from comparing the respective contributions toward such causation made by each. *Earll v. Consolidated Aluminum Corp.,* 714 S.W. 2d 932, 937 (Mo. Ct. App. 1986); *see also Hefele v. National Supermarkets, Inc.,* 748 S.W. 2d 800, 802 (Mo. Ct. App. 1988) ("Under comparative fault the jury is allowed to assess defendant's fault for failure to maintain premises in a reasonably safe condition and plaintiff's fault in failing to use ordinary care in discovery an obvious danger.").

Plaintiffs move for Partial Summary Judgment procedurally, arguing the Defendants did not adequately plead facts to support the defense, and substantively that no reasonable jury could find Jack Lipp comparatively at fault for his injuries. Defendants contend that the defense was adequately plead and that "[s]ubstantial evidence exists from which a jury could assess fault against decedent Lipp's conduct including . . . failure to keep a careful lookout and failure to use ordinary care in discovering an obvious danger." [Doc. 396, p. 7].

### A. Pleading Standards

Plaintiffs pray the Court apply the heightened pleading standards of *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) to Defendants' comparative fault affirmative defense. Although *Twombly* and *Iqbal* dealt solely

5

Case 2:15-cv-04257-NKL   Document 453   Filed 01/19/17   Page 5 of 11

with the adequacy of a complaint, Plaintiffs argue that post-*Iqbal* lower courts have decided that same high pleading bar applies to affirmative defenses. [Doc. 376, p. 8] (citing *Francisco v. Verizon South, Inc.,* 2010 WL 2990159 at *6 [n. 3] (E.D. Va. Jul. 29, 2010) (noting a majority of district courts have applied *Iqbal* to affirmative defenses)). However, neither the U.S. Supreme Court nor the Eighth Circuit Court of Appeals have addressed the applicability of the plausibility standard to affirmative defenses and there is no consensus within the federal district courts of the Eighth Circuit, including the Western District of Missouri. *Cincinnati Ins. Co. v. The Missouri Highway & Transportation Commission*, 2014 WL 12585788 at 6 (W.D. Mo. January 17, 2014); *see also* [Doc. 396, p. 9 n.4] (comparing cases in which courts have and have not applied a heightened plausibility standard to affirmative defenses).

For the purpose of Plaintiffs' Motion, even if the Court applied the heightened standard of *Twombly* and *Iqbal*, Defendants have adequately plead the comparative fault defense. Defendants ACC, Ginger C, and Roland Management each affirmatively state that "Plaintiffs' damages, if any, were caused by Jack Lipp's failure to keep a careful lookout and observe both the edge of the balcony and the railing." [Doc. 201, p. 15]; [Doc. 190, pp. 8–9]; [Docs. 199–204]. The "careful lookout" defense requires a defendant to prove the comparatively negligent plaintiff "could have seen the danger and could have taken effective precautionary action to avoid it." *Rider v. The Young Men's Christian Association of Greater Kansas City*, 460 S.W.3d 378, 384 (Mo. Ct. App. 2015). Specific facts are not necessary at the pleading stage to render it plausible; the pleadings must simply provide fair notice of what the defense is and the grounds upon which it rests. *See Twombly*, 550 U.S. at 555.

The question posed is whether "the pleaded factual content allows the court to draw the reasonable inference that the affirmative defense excuses the defendant from liability for the

6

misconduct alleged." *Id.* A reasonable inference is more than just "conceivable" but less than a "probability." *Id.* at 556. Utilizing this standard, the Defendants affirmative defenses seek to compare fault based upon Jack Lipp's failure to keep a careful lookout, and failure to use ordinary care to observe "an obvious danger." Failing to observe an "open and obvious" condition is a factual allegation that could "allow[] the court to draw the reasonable inference that the affirmative defense excuses the defendant from liability for the misconduct alleged." *Twombly*, 550 U.S. at 555.

Construing Defendants' factual allegations surrounding Jack Lipp's conduct in the light most favorable to them for the purposes of this Motion for Partial Summary Judgment only, Defendants have each pled factual content to support a comparative fault defense and have provided Plaintiffs fair notice of this defense.

### B. Substantive Factual Support

Plaintiffs also move for partial summary judgment on the grounds that Defendants have not come forward with "substantial evidence" of comparative fault. Plaintiffs allege that none of defendants' designated experts has offered an opinion: (1) "that Jack Lipp was negligent or somehow at fault for his injuries"; (2) "about any act or omission of Jack Lipp that caused or contributed to cause Jack Lipp's fall, subsequent injuries or death"; or (3) "that Jack Lipp could have or should have seen the dangerous condition of the balcony railing." [Doc. 376, p. 4]. A review of Defendants' experts' reports, however, supports Defendants' denial of those facts.

Carl Martin stated opinions in his report assuming that the balcony railing was there, which does not contradict Defendants' position that it was not present, but rather rebuts Plaintiffs' experts using Plaintiffs' assumption that the railing was present. *See* [Doc. 396]. Mr. Martin opined in his report that "the railing would have provided a visual barrier to the edge of

7

Case 2:15-cv-04257-NKL   Document 453   Filed 01/19/17   Page 7 of 11

the balcony and some resistance to lateral force application that would have been reasonably discernable by a person on the balcony," [Doc. 396-1, p. S-3]. He further stated that the balcony area was not accessible from common areas of the residence, the access door to the balcony area was closed, and warning signage was placed on the balcony door to support his opinion that a "reasonable person on the balcony should be able to ascertain the top railing was temporary and could present a hazard." *Id.* at S-4. Finally, he states "the temporary railing system would provide a reasonable, visible notice hazard to someone on the balcony to prevent someone from leaning on the balcony." *Id.* at S-5.

Furthermore, expert testimony is not required unless it is clear that the jurors, themselves, are not capable, for want of experience or knowledge of the subject, of drawing correct conclusions from the facts proved. *State v. Sloan,* 912 S.W.2d 592, 596 (Mo. Ct. App. 1995). Where the jury is competent to draw conclusions, an expert's testimony may be unnecessary. *Stucker v. Chitwood,* 841 S.W.2d 816, 819 (Mo. Ct. App. 1992); *Williams v. McCoy,* 854 S.W.2d 545, 550–52 (Mo. Ct. App. 1993). In this case, whether Mr. Lipp failed to keep a careful lookout or failed to use ordinary care to avoid a dangerous condition that Plaintiffs themselves classify as "open and obvious" is within the common knowledge and experience of the jury.

Because no witness saw Jack Lipp fall from the balcony, Plaintiffs invoked the presumption under Missouri law that if a decedent's death is unobserved, it is presumed that the decedent acted with due care and "was not guilty of negligence contributing to his death." *See* [Doc. 376, p. 10–11] (citing *Daniels v. Senior Care, Inc.,* 21 S.W.3d 133, 139 (Mo. Ct. App. 2000) ("Furthermore, there is a presumption that a decedent was not guilty of negligence contributing to his death where, as here, there was no eyewitnesses or direct evidence of conduct which would indicate negligence")); *Lindsay v. Wille*, 348 S.W.2d 1, 4 (Mo. 1961) ("[I]n the

absence of substantial evidence establishing negligence there is a presumption that a defendant exercised due care").

Even with that presumption, comparative fault is appropriate "if there exists substantial evidence, not mere speculation or conjecture, that plaintiff's conduct was a contributing cause of her damages." *Rill v. Trautman*, 950 F. Supp. 268, 272 (E.D. Mo. 1996) (citing *Hughes v. Palermo,* 911 S.W.2d 673, 674 (Mo. Ct. App. 1995)). Substantial evidence is evidence, which if true, is probative of the issues and from which the jury can decide the case. *Powderly v. South County Anesthesia Associates, Ltd*., 245 S.W. 3d 267 (Mo. Ct. App. 2008). Causation may be established through circumstantial evidence and the reasonable inferences that may be drawn from that evidence. *Honey v. Barnes Hosp*., 708 S.W. 2d 686, 694 (Mo. Ct. App. 1986); *Berra v. Union Elec-Co.,* 803 S.W. 2d 188, 190-191 (Mo. Ct. App. 1991) (finding that the conduct of the decedent may be inferred from circumstantial evidence).

Missouri courts consistently hold that where a duty to look exists it is only contributory negligence to fail to see what is "*plainly visible.*" *Rider*, 460 S.W.3d at 384 (emphasis in original). "A person, however, is not required to look for danger where there is no cause to anticipate it." *Id.* Based on disputed testimony and where the balcony railing was found in relation to Jack Lipp after he fell, Defendants deny that the railing was in place when Jack Lipp went out to the balcony. Plaintiffs argue, then, that "Defendants cannot simultaneously deny the railing was in place when Jack Lipp fell while also claiming the railing *was* in place and Jack Lipp was negligent for not seeing the railing." [Doc. 437, p. 11]. This argument is unpersuasive; a reasonable jury could find that failing to notice the lack of a railing could also constitute a failure to maintain a proper lookout.

Plaintiffs also argue that there is no evidentiary support for the proposition that Jack Lipp

9

"failed to use ordinary care." Yet the tenants testified that the only way onto the balcony was through the doorway in Strzalka's bedroom, that the tenants and Reichart agreed to close off the balcony because it was dangerous, that the balcony door was locked, that chairs barricaded the door and that a sign was placed on the balcony door which stated "do not use balcony." From this evidence and the reasonable inferences drawn from it, a jury could find that Jack Lipp intentionally disregarded the barricade, the locked door and the sign to go out on the balcony and therefore failed to use ordinary care to avoid a dangerous condition. While the Columbia Police Department photos do not show such attempts to exclude attendees from going out to the balcony, that conflicting evidence must be resolved by a jury, as the Court's job at the summary judgment stage is not to weigh the credibility of evidence, but only to determine whether there is an issue for trial. *See Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 868 (8th Cir. 2015).

On Defendants' comparative fault defense, there is an issue for trial. Viewing all facts in the light most favorable to Defendants and drawing all reasonable inferences in their favor for the purposes of this Motion only, a reasonable jury could find that Jack Lipp failed to keep a careful lookout and failed to use ordinary care in discovering an obvious danger.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Comparative Fault Defense, [Doc. 375], is denied.

s/ Nanette K. Laughrey
                                                                    NANETTE K. LAUGHREY
                                                                    United States District Judge

Dated:  January 19, 2017
Jefferson City, Missouri