IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN P. LIPP and STEPHANIE S. LIPP, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:15-cv-04257-NKL |
| GINGER C, L.L.C., *et al.*, | ) |
| Defendants. | ) |

**ORDER**

Before the Court is Plaintiffs' Motion in Limine to Exclude Evidence and/or Argument Related to Alcohol, Drugs, and Partying [Doc. 431]. For the following reasons, the motion is granted in part and denied in part.

**I.     Background**

Plaintiffs, the surviving parents of Jack Lipp, filed suit alleging negligence against Defendants Ginger C, five American Campus Communities entities (ACC), and Roland Management. The suit stems from Lipp's death, which occurred when he fell off a balcony at 507 South Fourth Street in Columbia, Missouri while attending a fraternity "rush" party.

Plaintiffs anticipate Defendants will attempt to introduce evidence and/or argument that decedent Jack Lipp was intoxicated at the time leading up to his death. [Doc. 431, p. 1]. Plaintiffs anticipate Defendants will proffer what Plaintiffs classify as circumstantial evidence in the following forms:

(1) "[T]he testimony of five witnesses, who were admittedly so intoxicated at the time their competency to testify is genuinely disputed and did not actually observe Jack Lipp consume any alcohol or other intoxicant";

(2) "[A] prior photograph of Jack Lipp holding a cup with unidentified liquid in it"; and

(3) "[T]he speculative notion that Jack Lipp must have been drinking because he was present at a college house party."

*Id.* at 1–2. Plaintiffs move to exclude this evidence under Fed. R. Evid. 401, 403, and 601.

## II.  Discussion

This Court has diversity subject matter jurisdiction and state law generally governs substantive issues and the Federal Rules of Evidence govern the admissibility of evidence. 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938); *Potts v. Benjamin,* 882 F.2d 1320, 1324 (8th Cir. 1989). The evidence described above relating to alcohol, drugs, or partying could be relevant to the defense of comparative fault, which Defendants have asserted. Under the pure comparative fault principles adopted by Missouri in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc. 1983), the injured party's own negligence is compared to that of the negligence of defendant to determine whether any damages awarded should be diminished in proportion to the amount of negligence attributable to that plaintiff. *Cornell v. Texaco, Inc.,* 712 S.W.2d 680, 682 (Mo. banc. 1986). The Court will apply the Federal Rules of Evidence to determine relevancy, and Missouri law to determine the admissibility of evidence relating to the affirmative defense of comparative fault. *See e.g., Potts*, 882 F. 2d at 1324 ("A statute modifying the content of state tort law doctrines of contributory and comparative negligence seems to us to be a classic example of the type of substantive rule of law binding upon a federal court in a diversity case."); *Winningham v. Swift Trans. Co., Inc.*, 2007 WL 2245888 *1 (W.D. Mo. August 2, 2007).

The Federal Rules of Evidence provide that all "relevant evidence" is admissible, unless otherwise prohibited. *See* Fed. R. Evid. 402. The trial court has broad discretion in deciding whether to admit evidence at trial. *See Fortune Funding LLC v. Ceridian Corp.,* 368 F.3d 985, 990 (8th Cir. 2004).

### A. Witness Testimony

Defendants may offer witness testimony of the following five individuals who were present at the house around the time that Jack Lipp fell to his death: (1) Christopher Strzalka, (2) Daniel Mikes, (3) Lukas Reichert, (4) Nicole Rochon, and (5) Scott Campbell.[1] Plaintiffs challenge the competency of witnesses who admit to being intoxicated during the party, as well as the relevancy of their testimony. Plaintiffs further assert that under Fed. R. Evid. 403, the probative nature of this testimony is substantially outweighed by the prejudicial effect the evidence will have.

#### 1. Competency

In a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision. Fed. R. Evid. 601. Under Missouri law, "a witness is not incompetent because he was intoxicated at the time of the event testified to, unless

---

[1] Defendants suggest that Plaintiffs' motion is "premature" because two new potential witnesses, Jake Zimmerman and Anthony Azelmo, "may be called as witnesses to testify about Jack Lipp's consumption of alcohol immediately preceding arrival at the party." [Doc. 446, p. 9 n.12]. Defendants apparently learned that Zimmerman and Azelmo had been at a bar with Jack Lipp prior to arriving at the party through the deposition of Molly Yrigoyen, which was taken with the Court's permission on November 30, 2016.
  In their reply brief, Plaintiffs argue that those two witnesses "cannot be called by Defendants to testify at trial" because they were not disclosed under any of the eight ACC disclosures or five Ginger C disclosures under Rule 26(a)(1). Plaintiffs contend it is "far too late for Defendants to derail Plaintiffs' motion by suggesting some last minute, undisclosed witnesses may suddenly bolster Defendants' position." [Doc. 450, p. 2]. The Court rarely relies on new arguments in reply briefs because the respondent did not have an opportunity to respond. *See United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2013). Further, the Court has received no briefing on the substance of this potential testimony and this Order does not rule on the admissibility of that testimony.

he was so intoxicated as to have been insensible." *State v. Pflugradt,* 463 S.W.2d 566, 570 (Mo. App. 1971) (citations omitted).

Each of the five witnesses noted in Plaintiffs' Motion testified at their deposition that, on the night of the party, they themselves were drinking and/or intoxicated to the point that their memory may have been affected. Christopher Strzalka testified that he was "very intoxicated," that he "had taken some other drugs as well," and told the police he didn't remember anything. [Doc. 431-1, p. 74]. Daniel Mikes estimated that, on a scale from 1 – 10, with 10 being "blacked out," his intoxication was around a 7 when he saw Jack Lipp and that he does not remember walking home that evening. [Doc. 431-2, pp. 55–57]. Nicole Rochon estimated that, on the same 1 – 10 scale, her level of intoxication was "[p]robably like a 6 or a 7. Like I feel like I was pretty intoxicated, but not to the point where I couldn't function or couldn't talk or anything like that." [Doc. 431-4, p. 57]. Scott Campbell estimated his intoxication at "[r]ight around a 7 or 8." [Doc. 431-5, p. 67]. Campbell stated that he wasn't blacked out, but he had trouble walking and talking. *Id.* at 53–54.

Plaintiffs cite to the above excerpts to argue that "there is a genuine dispute as to whether these witnesses are competent to testify *at all*, let alone form a sufficient basis . . . to allow admission of extremely prejudicial speculation that Jack Lipp was intoxicated when he fell." [Doc. 431, p. 4]. But "a witness is not incompetent because he was intoxicated at the time of the event testified to, unless he was so intoxicated as to have been insensible." *Pflugradt,* 463 S.W.2d at 570. Plaintiffs put forth no legal argument that the witnesses were insensible, only that they were intoxicated. Both Campbell and Mikes testified that they were under the influence of alcohol during the party, but neither Campbell nor Mikes stated in their testimony that they were so intoxicated that they could not recall the events of the evening.

Further, Plaintiffs themselves have cited to the testimony of several of those witnesses in other briefings on motions currently before the Court with no mention of competency concerns. *See, e.g.*, [Docs. 398, 404, 406]. The Court will not exclude the testimony of Campbell or Mikes on the basis of competency. Any challenges to the witnesses' ability to accurately perceive the events of December 12–13 go to credibility, not admissibility, and may be resolved on cross-examination. *See State v. Myers*, 538 S.W. 2d 892, 897 (Mo. Ct. App. 1976).

### 2. Relevancy

Christopher Strzalka testified that he never saw Jack Lipp the evening of the party. [Doc. 431-1, p. 28]. Lukas Reichert also testified that he never saw Jack Lipp that evening. [Doc. 431-3, p. 80]. Nicole Rochon, who noticed Jack Lipp on the ground sometime after he fell, testified that while inside the party did not recall seeing Lipp. [Doc. 431-4, p. 21]. Plaintiffs argue that the testimony of Strzalka, Reichert, and Rochon is not relevant because none of them can offer any testimony that has a tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Plaintiffs do not seem to challenge Daniel Mikes and Scott Campbell on relevancy grounds; Mikes and Campbell each saw Jack Lipp on the night of the party and stated observations that Lipp may have been intoxicated. *See* [Doc. 446].

Defendants maintain that the testimony of Strzalka, Reichert, and Rochon provides the jury with a complete picture of the party and testimony regarding alcohol "is relevant to the perceptions and observations of the witnesses who attended the party." [Doc. 446, p. 2]. Defendants also argue the evidence "is necessary to permit the jury to properly assess the credibility of the witnesses who attended the party[,] and is necessary to provide the jury a complete story of the events of that night." *Id.*

The Court defers ruling on the testimony of Strzalka, Reichert, and Rochon.

5

### 3. Probative Value & Prejudicial Effect

Under Rule 403 relevant evidence may only be excluded if its probative value is substantially outweighed by the factors set forth in the rule including the danger of unfair prejudice. Fed. R. Evid. 403. "In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *Block v. R.H. Macy & Co., Inc.*, 712 F.2d 1241, 1244 (8th Cir. 1983). Unfair prejudice means an undue tendency to suggest decision on an improper basis. *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007). A decision on an "improper basis" is "commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Notes.

Plaintiffs note that Defendants "do not have evidence of Jack Lipp's blood alcohol content. Defendants do not have evidence of witnesses who observed Jack Lipp actually drinking or consuming an intoxicant. In fact, there is no evidence from any source of Jack Lipp even holding an alcoholic drink on the night of his fall." [Doc. 431, p. 2]. Plaintiffs analogize to testimony regarding an intoxicated driver:

> Would an eyewitness be allowed to testify that a driver was intoxicated simply because he observed the driver at a party and later saw the driver swerve his vehicle? Of course not. No court would allow such testimony. Just being at a party does not make you intoxicated, and there are many reasons other than alcohol why a driver might swerve his vehicle. Without evidence the driver was actually consuming alcohol, it would be rank speculation for the eyewitness to opine that the swerving was caused by alcohol.

[Doc. 450, p. 1]. Plaintiffs thus argue for the exclusion of all argument and evidence that references any alcohol, drugs, or Jack Lipp's alleged intoxication because it is speculative and because its probative value is substantially outweighed by its prejudicial effect.

However, the eyewitness testimony Defendants proffer is not speculative; under Missouri law, lay witness testimony on the issue of intoxication is admissible. Even without a toxicology report,[2] witnesses that can testify to their perception of Jack Lipp are not the kind of speculation involved with seeing a driver swerve without any other indicia of intoxication. In addition to the testimony of Scott Campbell and Daniel Mikes, Andrew Elli, a paramedic who responded to the scene and tended to Jack Lipp, testified that he smelled alcohol around Lipp's person. [Doc. 446-3, pp. 16–17]. Although Mr. Elli did not know whether the alcohol smell was coming from Jack Lipp or someone else, [Doc. 450, p. 7], lack of certainty is not grounds for exclusion. Deposition testimony that Jack Lipp "was stumbling around," "couldn't walk right," had "slurred speech," and that the area around Jack Lipp's person smelled of alcohol is admissible indicia of intoxication. *See State v. Vanosdol,* 974 S.W.2d 650, 652 (Mo. Ct. App. 1998) ("Intoxication may be proved by the testimony of any witness, including a lay witness, who had a reasonable opportunity to observe the alleged offender."); *State v. England*, 92 S.W.3d 335, 342 (Mo. Ct. App. 2002) ("Bloodshot and watery eyes, slurred speech, and the smell of alcohol on one's breath are indicia of intoxication.").

The probative value of any evidence of Jack Lipp's alleged intoxication is high because that evidence is relevant to causation, fault and comparative fault. *See e.g., Spencer v. Crawford*, 687 S.W. 2d 243, 245 (Mo. Ct. App. 1985) (evidence of plaintiff's intoxication when he fell in coal chute relevant to causation); *Steinhoff v. Rolen*, 945 S.W. 2d 516, 517 (Mo. Ct. App. 1997) (evidence of alcohol consumption relevant to show sensory deficits and comparative fault); *Blackwell v. Simmons*, 202 S.W. 3d 715, 716 (Mo. Ct. App. 2006) (evidence of intoxication relevant to fault-intoxication and failure to keep a careful lookout). Evidence of Jack Lipp's

---

[2] Though ordered, no blood test for ethanol (alcohol) was performed on Lipp at the hospital. [Doc. 446-6, pp. 38–40].

ability to perceive and observe the conditions of the premises is relevant and highly probative. *Spencer,* 687 S.W. 2d at 245.

Plaintiffs contend that this probative value is substantially outweighed by its prejudicial effect. The Court disagrees. Rule 403 does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case; unfair prejudice means an undue tendency to suggest decision on an improper basis. *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007). Unfairly prejudicial evidence has been described as evidence that is "so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial." *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005). In this case, Jack Lipp's alleged intoxication may be one of the most material issues in the trial insofar as it affected his ability to perceive danger and keep a careful lookout under Defendants' comparative fault defense.

Each case Plaintiffs cite for support is distinguishable. In *Littleton v. McNeely*, 562 F.3d 880 (8th Cir. 2009), the defendant sought the introduction of photographs taken of the Littletons at "Party Cove," a notorious alcove at the Lake of the Ozarks known for "drinking alcohol, nudity, 'debauchery and craziness.'" *Id.* at 888. The court excluded the photographs and any mention of the phrase "Party Cove" because the only purpose of mentioning the phrase would be to unfairly suggest to the jury that the Littletons were engaged in offensive and immoral behavior. *Id.* at 889. However, the photographs did not show any party in the case drinking but rather simply showed topless women. Further the photographs were allegedly offered to establish the drinking of a passenger whose negligence was not the subject of the litigation. *Id.* at 888-889. The boating accident did not occur at "Party Cove" and happened hours after the Littletons had visited, so the court found that any description of that place had little probative value. *Id*. at 889.

Here, the eyewitness testimony is from the party where Jack Lipp was injured. Further, the Eighth Circuit expressly held that evidence of Littleton's own consumption was "relevant to the issue of not keeping a proper lookout or not turning on the lights." *Id.* at 890.

In *Simco v. Ellis,* 303 F.3d 929 (8th Cir. 2002), the administratix of an estate alleged that the trial court erred in excluding "blood-test evidence that she claims shows [the defendant] had ingested cocaine on the morning of [a tractor-trailer] accident." The Eighth Circuit found the trial court did not abuse its discretion in excluding what was deemed to be an *incomplete* drug toxicology test when there was no other evidence of intoxication or impairment at the time of the accident. *Id*. While "the mere mention of cocaine would inflame the jury and be extremely prejudicial to the defendants" in that case, the Court can conceive of no possible way to try this case before a jury—where the decedent was injured at a fraternity rush party—without the mention of alcohol. Further, there is other evidence of impairment in the form of eyewitness testimony noting indicia of intoxication.

In *Hosto v. Union Elec. Co.,* 51 S.W.3d 133 (Mo. Ct. App. 2001), a helicopter struck electric lines and crashed, killing the pilot and the passenger. The pilot had a blood alcohol level .114, and the jury was given a comparative fault instruction in his wrongful death suit. The defendant appealed the trial court's decision to exclude evidence of the passenger's blood alcohol level and the appellate court affirmed. In that case, there was no evidence that the passenger consumed alcohol with the pilot and the defendant's "speculation that she may have . . . witnessed him drinking is not substantial evidence to warrant the submission of comparative fault instruction to the jury." *Id.* at 143. In this case, where both Parties believe that Jack Lipp was on the balcony alone, evidence of his own alleged intoxication is relevant and probative.

9

Plaintiffs also cite *Two Rivers Bank & Trust v. Atanasova*, 686 F.3d 554 (8th Cir. 2012) for the proposition that the "prejudicial effect of marijuana use outweighed probative value." [Doc. 450, p. 1]. But in that case, after a car accident, "[n]o evidence suggested that [the plaintiff] had used marijuana on the date of the accident. Thus, the fact that [she] may have used marijuana around that time would have had 'an undue tendency to suggest decision on an improper basis.'" *Two Rivers*, 686 F.3d at 563 (citing *United States v. Yellow*, 18 F.3d 1438, 1442 (8th Cir. 1994)). The Eighth Circuit further explained: "The absence of any indication that [plaintiff] was impaired makes this case different from those where we have upheld the admission of evidence that the plaintiff was under the influence of drugs or alcohol at the time of an accident." *Id.* (citations omitted). This case is the latter scenario, with evidence that Jack Lipp may have been intoxicated at the time of his fall.

Plaintiffs are correct that, at least as the record stands on the date of this Order, there is no direct testimony of witnesses observing Jack Lipp consuming alcohol the night that he fell. Plaintiffs note what they call an "impermissible leap" in Defendants' argument—that because they proffer no testimony of any witness observing Jack Lipp drink alcohol, Defendants cannot then introduce testimony observing the effects of alcohol consumption. Plaintiffs argue that the cases Defendants cite for support do not make this leap, and offer "objective evidence of alcohol consumption, not just speculative testimony that an individual was 'intoxicated.'" [Doc. 450, p. 4]. Plaintiffs' interpretation of the case law would exclude all evidence of intoxication in any case where a Party consumed alcohol or used drugs alone.

Here, eyewitness testimony that offers indicia of Jack Lipp's alleged intoxication and testimony surrounding the atmosphere of the party are relevant, probative, and admissible. *See State v. Vanosdol,* 974 S.W.2d 650, 652 (Mo. Ct. App. 1998); *State v. England*, 92 S.W.3d 335,

10

Case 2:15-cv-04257-NKL   Document 456   Filed 01/19/17   Page 10 of 13

342 (Mo. Ct. App. 2002). Issues of witness credibility and any flaws in the foundation of a witness' testimony, i.e. that the witness did not observe Jack Lipp consume any alcohol, are for the jury to decide and may be attacked during cross examination. *See Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001).

### B. Photographs

Plaintiffs expect Defendants to attempt to introduce "a prior photograph of Jack Lipp holding a cup with unidentified liquid in it." [Doc. 431, pp. 1–2]. Plaintiffs also believe "Defendants want to parade around the courtroom inflammatory photographs of the party taken by the Columbia Police Department." [Doc. 450, p. 10]. The prior photograph of Jack Lipp, taken from his Facebook page, was not taken the night in question and thus has no relevance. The only possible use that picture could serve is to show the jury that Jack Lipp drank alcohol on some previous occasion in order to prove that Jack Lipp did so again on December 12, 2014, which is prohibited. That photograph is excluded under Fed. R. Evid. 401 and 404.

The pictures taken of the property after the party show the home in disarray, with beer cans and empty alcohol bottles strewn about the floor and on various tables. Defendants maintain these photographs are "relevant and probative of the condition of the property and assist the jury in understanding the complete story of the party that night." [Doc. 446, p. 10].

The probative value of these photographs is minimal compared with the prejudicial effect they may have. Rule 403 protects against an undue tendency to suggest decision on an improper basis. *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007). These photographs add little probative value to this case; Defendants have multiple witnesses to testify to the atmosphere of the party. The potential for an unduly

11

prejudicial effect, conversely, is high. These pictures have a high probability of "divert[ing] the jury's attention from the material issues in the trial." *Adams*, 401 F.3d at 900.

The Court excludes the photographs of the property at 507 South Fourth Street taken on December 13, 2014. This ruling is subject to reconsideration during trial depending on circumstances of the trial.

### C. General Arguments About the Party

Plaintiffs expect Defendants to argue "the speculative notion that Jack Lipp must have been drinking because he was present at a college house party." *Id.* at 2. Neither Party stated argument on this general notion of the party atmosphere. Because neither Party briefed the Court on any inferences made to Lipp's conduct drawn from the general atmosphere of the party, nor any specific evidence the Plaintiff wishes to exclude on this argument aside from the photographs analyzed above, the Court declines to rule on its admissibility.

## III. Conclusion

For the foregoing reasons, Plaintiffs' Motion in Limine to Exclude Evidence and/or Argument Related to Alcohol, Drugs, and Partying, [Doc. 431], is granted in part and denied in part. Plaintiffs' Motion to exclude the testimony of Daniel Mikes and Scott Campbell is denied. Plaintiffs' Motion to exclude a prior photograph of Jack Lipp and photographs of 507 South Fourth Street taken on December 13, 2014 is granted. The Court defers ruling on the testimony of Christopher Strzalka, Lukas Reichert, Nicole Rochon.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 19, 2017  
Jefferson City, Missouri