IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN P. LIPP and STEPHANIE S. LIPP, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 2:15-cv-04257-NKL |
| | ) |
| GINGER C, L.L.C., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

Before the Court are Plaintiffs' Motion to Exclude Testimony of Michael White, [Doc. [367]], Audrey Navarro, [Doc. [368]], Carl Martin, [Doc. [369]], Dr. Alfred Bowles [Doc. 370], and Fred Crouch, [Doc. [377]]. For the reasons discussed below, Plaintiffs' Motions to Exclude the Testimony of Michael White, Carl Martin, and Fred Crouch are each granted in part and denied in part. Plaintiffs' Motion to Exclude the Testimony of Audrey Navarro is granted. Plaintiffs' Motion to Exclude the Testimony of Dr. Alfred Bowles is denied.

**I.   Background**

On December 12–13, 2014, former Defendant Phi Kappa Phi Fraternity members hosted a party at 507 South Fourth Street in Columbia, Missouri. Jack Lipp arrived at this party sometime after 11:00 p.m.  At some point in the next hour, Lipp went onto a second-floor balcony on the south side of the property.  Columbia Police believe party attendees had been urinating off the deck throughout the night due to long bathroom lines inside the house.  Lipp fell

18 feet off the balcony to the driveway below. Lipp died on December 25, 2014 as a result of his injuries.

The balcony railing had been temporarily repaired by a prior owner of the property with wooden boards. Many of the issues in this case center around the condition of the balcony—who was responsible for repairing it, whether a balcony railing was in place, etc. At the time of Lipp's injury, 507 South Fourth Street was owned by Ginger C, which had an agreement with ACC to redevelop the property. ACC planned to remove the existing structure on the premises to make room for a large student apartment complex, and to this end ACC financed Ginger C's purchase of the property. However, in the spring and summer of 2014, the Columbia City Council repeatedly tabled its consideration of ACC's proposed project. Due to this delay, the existing structure was leased in August 2014 to three male students, members of the PKP Fraternity, for the upcoming school year. Roland Management had an agreement with Ginger C to manage the rental property at 507 South Fourth Street.

Plaintiffs—the surviving parents of Jack Lipp—filed this suit on November 9, 2015. Their Fourth Amended Complaint, [Doc. 191], contains four counts of negligence, one each against ACC, Ginger C, Roland, and Scott Swafford, as Class Representative for Pi Kappa Phi Fraternity. Plaintiffs reached a settlement with Pi Kappa Phi, which the Court approved, and Scott Swafford was terminated as a Defendant thereafter.

Plaintiffs move to exclude five of Defendants' designated expert witnesses: Michael White, Audrey Navarro, Carl Martin, Dr. Alfred Bowles, and Fred Crouch.

II. Discussion

    A. **Legal Standard**

Federal trial judges have "broad discretion" in making decisions concerning expert testimony's admissibility. *Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). Under Fed. R. Evid. 702 and the guidance set forth in *Daubert*, expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC,* 754 F.3d 557, 562 (8th Cir. 2014) (citing *U.S. v. Finch,* 630 F.3d 1057, 1062 (8th Cir. 2011) (holding that doubts about usefulness of expert testimony are resolved in favor of admissibility)); *Robinson v. GEICO Gen. Ins. Co.,* 447 F.3d 1096, 1100 (8th Cir. 2006) (holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree"); *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) (Rule 702 "clearly is one of admissibility rather than exclusion"). "As long as the expert's . . . testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (citing *Daubert,* 509 U.S. at 590, 596). Exclusion of expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.,* 112 F.3d 306, 309 (8th Cir. 1997).

Even so, pursuant to *Daubert*, the Court's role as "gatekeeper" in determining the admissibility of expert testimony requires the Court to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93. "The main purpose of *Daubert* exclusion is to prevent juries from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig.,* 644 F.3d 604, 613 (8th Cir. 2011). This question of whether "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" is

known as the "reliability and relevancy" test. *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

When making the reliability and relevancy determinations, a court may consider: (1) "whether the theory or technique can be or has been tested"; (2) "whether the theory or technique has been subjected to peer review or publication"; (3) "whether the theory or technique has a known or potential error rate and standards controlling the technique's operation"; and (4) "whether the theory or technique is generally accepted in the scientific community." *Russell*, 702 F.3d at 456 (citing *Daubert*, 509 U.S. at 592–94).

The *Daubert* standard is "flexible" and the above factors are guidelines rather than "a definitive checklist." *Jaurequi v. Carter Manufacturing Company, Inc.*, 173 F.3d 1076, 1082 (8th Cir. 1999). The expert's testimony must at the very least satisfy "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," but "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 151, 153.

Defendants have the burden of establishing the admissibility of their experts' testimony by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592).

### B. Michael White

Michael White is a real estate attorney with "more than fifty years of experience representing clients in complex commercial real estate." [Doc. 399, p. 3]. Defendants ACC designated Mr. White "to testify 'regarding the standard of care and industry custom and practice for real estate developers of existing property, the Planned Unit Development [at issue in this

case], the entitlement and permitting process, [and] the standard of care and custom of practice in the real estate industry regarding inspections and inspection periods.'" *Id.*

Plaintiffs point to five of Mr. White's opinions that they believe must be excluded under *Daubert*, opinions regarding (1) whether Defendants Ginger C and ACC had a joint venture relationship; (2) whether Ginger C or its managing member were agents of ACC; (3) the weight and effect of emails in interpreting documents; (4) the Parties' intent; and (5) other comments regarding the effect that finding a joint venture relationship existed between Ginger C and ACC would have on other real estate transactions. [Doc. 367, pp. 2 – 3].

### 1. Joint Venture Opinions

Mr. White's report includes a detailed summary of the elements of a joint venture under Missouri law. [Doc. 367-2, pp. 4 – 5]. He then applies his law to the facts of this case and reaches the conclusion that there is no joint venture between ACC and Ginger C.

Plaintiffs maintain that Mr. White's opinion must be excluded because it reaches the ultimate legal issues in the case and that the opinion is not the product of reliable methods because it relies on arguments the Plaintiffs have not made. [Doc. 367, pp. 5–6]. Plaintiffs also characterize Mr. White's testimony as impermissible because whether or not an implied joint venture resulted from the Parties' business relationship is a legal conclusion to be reached by the judge or jury. Mr. White's report states: "It is my opinion that, based upon my review of the documents referenced herein, Ginger has no rights with respect to the student housing once it is built. Ginger had no control over the student housing project . . . It retained no ownership interest. Ginger was merely a seller that received a loan . . ." [Doc. 367-2, p. 5].

Expert witnesses—even attorneys testifying as experts—may not offer legal conclusions about a case. *In re Acceptance Ins. Companies Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005).

Whether or not testimony constitutes a legal conclusion, Fed. R. Evid. 702 requires that the "specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue." "[E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge 'if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation.'" *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (quoting *United States Smelting Co. vs. Parry*, 166 Fed. 407, 411, 415 (8 Cir. 1909)).

Defendants insist that the legal issues in this case are "beyond the expertise of most lay jurors." [Doc. 399, p. 5]. Here, Mr. White's opinions about the requirements for a joint venture under Missouri law are neither technical nor complex; it only needed one half of one page in his report to explain. *See* [Doc. 367-2, p. 4]. Allowing testimony as to the requirements for a joint venture—a matter that can be illustrated succinctly in jury instructions—would be improper because it is unnecessary, not helpful to the jury and, cloaked as expert testimony, would be unduly prejudicial. *See Salem*, 370 U.S. at 35. Defendants argue "Mr. White's experience, training, and education qualifies him to give opinions in this case." [Doc. 399, p. 5]. But the substance of those opinions are still subject to Rule 702, and the portions of Mr. White's testimony that relate to the legal requirements for a joint venture are improper. *See Lewis v. Butz*, 512 F.2d 681, 683 (8th Cir. 1975) ("[W]hether a joint venture is in existence is a question of fact to be determined by the trier of fact.").

Likewise, Mr. White's opinions regarding the sufficiency of the evidence supporting Plaintiffs' joint venture theory and his ultimate conclusions about the lack of a joint venture

6

relationship between Ginger C and ACC should be excluded. *See Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.3d 1402, 1409 (8th Cir. 1989) ("[S]pecial legal knowledge of the judge makes the witness' testimony superfluous [and] [t]he admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case."); *McCabe v. Macaulay*, 2007 WL 625569, at *3 (N.D. Iowa Feb. 26, 2007) ("[F]ederal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case."). *See generally Morley v. Square, Inc.*, 2016 WL 1728367, * 2 (E.D. Mo. April 29, 2016) (excluding an expert's testimony as to whether or not a joint venture existed because "concepts surrounding human interaction and basic business activity will not be foreign to the jury. These matters are not technical or complex . . .").

Plaintiffs' Motion is granted as it applies to Mr. White's testimony regarding the alleged joint venture relationship between Defendants Ginger C and ACC.

### 2. Agency Opinions

Plaintiffs make similar arguments for the exclusion of Mr. White's testimony regarding an alleged agency relationship between ACC and Ginger C, or Ginger C's representative Mr. Asmar. As in the joint venture relationship, an expert witness is not necessary to explain to the jury what Mr. White explained in just four sentences in his report. Like his opinions on the alleged joint venture relationship, all the primary facts surrounding the alleged agency relationship "can be accurately and intelligibly described to the jury." *Salem*, 370 U.S. at 35.

Defendants rely on a case from another district outside of the Eighth Circuit for support that Mr. White should be able to opine on the issues of joint venture and agency. *See* [Doc. 399, p. 6] (citing *Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity*

7

*Partners, LLC,* 722 F. Supp. 2d 845, 853 (E.D. Mich. 2010)). Even if the Court was persuaded by *Palladium*, Mr. White's testimony seeks to both tell the jury the legal elements of a joint venture and agency relationship as well as point out what he feels is missing in the documents he reviewed to demonstrate either relationship. The Court will exclude Mr. White's opinions on the alleged agency relationship for the reasons discussed above: even those opinions that do not explicitly offer legal conclusions are unnecessary and, cloaked as expert testimony, would be unduly prejudicial. *See Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.,* 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible.").

### 3. Interpretation and Effect Opinions

Mr. White's report includes references to "primary" and "formal documents" between ACC and Ginger C, and why those documents "carry more force in determining the legal status of the parties than do the various emails" between ACC and Ginger C. [Doc. 399-1, pp. 5–6]. Testimony regarding the weight and credibility of evidence as well as issues of contract interpretation are left to the jury. *See United States v. Klaphake*, 64 F.3d 435, 438 (8th Cir. 1995) ("As a general rule, 'questions of law are the subject of the court's instructions and not the subject of expert testimony.'") (citations omitted). These opinions are improper and must be excluded because those opinions do not assist the trier of fact and impermissibly invade the role of the court. *See Farmland*, 871 F.2d at 1409 ("[S]pecial legal knowledge of the judge makes the witness' testimony superfluous [and] [t]he admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case."). Mr. White's testimony regarding interpretation, effect and meaning of emails and legal documents is excluded.

### 4. Opinions Regarding Parties' Intent

Mr. White's report also states that certain documents and amendments "show that it was the intent of the parties that the properties would be vacant by the time [ACC] acquired them from Ginger C." [Doc. 399-1, p. 11]. Under Fed. R. Evid. 702, the testimony must be reliable, because the jury will understandably give additional weight to opinions offered by expert witnesses. *See In re Zurn Pex Plumbing Prods. Liab. Litig.,* 644 F.3d 604, 613 (8th Cir. 2011). It is well settled that expert witnesses cannot draw legal conclusions or opine on the Parties' state of mind. *See Garrett v. Albright,* 2008 U.S. Dist. LEXIS 18615, at *11 (W.D. Mo. Mar. 11, 2008); *Christensen v. Lemaster,* 2006 U.S. Dist. LEXIS 16905 (D. Idaho 2006) ("[The expert] is not an expert in either the law or psychology—and did not personally observe [defendant's] conduct—and thus has nothing to offer" on the defendant's state of mind). Thus, the Court excludes Mr. White's opinions on the intent of the Parties.

### 5. Other Challenged Opinions

Plaintiffs last challenge to Mr. White's testimony rests in what Plaintiffs call "rank speculation and hyperbole." By way of example, Plaintiffs note that Mr. White concludes that finding a joint venture between Ginger C and ACC would also mean that "virtually every contract for the sale of real estate for development" would create a joint venture arrangement. [Doc. 367, p. 10] [Doc. 399-1, p. 5]. During oral argument, Plaintiffs also point to Mr. White's opinion that, if a "mere financial interest in a contract . . . propel[s] one to the position of an owner," "every bank that makes a real estate loan would be liable to the general public for the conditions on the property." [Doc. 399-1, p. 20]. At this stage, the Court cannot say as a matter of law that these statements are inadmissible. The matter can be raised again at trial in the context of the testimony of Mr. White.

9

Therefore, Plaintiff's Motion to Exclude the Testimony of Michael White, [Doc. 367], is granted as it applies to Mr. White's opinions on the alleged joint venture, the alleged agency relationship, opinions regarding the proper weight given to certain evidence in interpreting documents, and opinions regarding the Parties' intent.

Finally, Defendants note that Mr. White may be asked to rebut specific allegations by Plaintiffs' experts. [Doc. 399, p. 8]. Impeachment of expert witness through contradictory testimony by another qualified expert is permitted under the Federal Rules of Evidence. *TAMKO Bldg. Products, Inc. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1144 (E.D. Mo. 2012). However, because the challenged testimony of Plaintiffs' experts does not touch on the subjects listed above—joint venture, agency, opinions regarding the proper weight given to certain evidence in interpreting documents, and the Parties' intent—Defendants must ensure not to introduce testimony on rebuttal that the Court has excluded through this Order.

### C. Audrey Navarro

Audrey Navarro is designated by Defendants as an expert in commercial real estate. [Doc. 401, p. 2]. Defendants ACC and Ginger C "designated Ms. Navarro to testify regarding the standard of care and the customs and practices of redevelopers applicable to them during the Columbia redevelopment project." *Id.* at 1.

Plaintiffs seek to exclude specific opinions contained in Ms. Navarro's report. Plaintiffs specifically challenge the following opinions in Ms. Navarro's report on the grounds that the opinions state legal conclusions or include interpretation of legal documents:

- [Initial Op.] "Defendants ACC . . . prior to the incident, had no possession, control or access to the subject property" [Doc. 368-2, p. 2].
- [1] "ACC did not own the subject property, nor have control of the subject property at the time of the incident." *Id.* at 3.
- [6] "Even though there were requests made by the Buyer (ACC) for template lease documents to be used [] by Ginger C, LLC, Ginger C had the authority,

10

- which it exercised, to continue to use its current lease template therefore demonstrating control over the subject property." *Id.* at 4.
- [7] "Although the purchase contract [] required ACC's consent for lease modification by the Seller (Ginger C, LLC) . . ." *Id.*
- [12] "Without a repair request, the property manager and owner would be unaware of any potential hazard . . . Tenant was required to keep the property in good order and repair." *Id.* at 5.
- [14] "The Missouri Real Estate Commission (MOREC) is the governing agency over Real Estate Agents and Property Management Professionals. RSMO Missouri General Assembly Chapter 339 is the statute that defines who is required to carry a license, and who is exempt from licensing. It does not, however, address standards of care related to the maintenance of a property by property management professionals. In addition, it outlines exemptions for Developers and Property Owners." *Id.* at 5–6.
- [16] "In the Lease Agreement (Exhibit 509) of the subject property, Lessee acknowledges that it has inspected the property and finds it to be in good repair and that Lessee will keep the property in good repair. Further, Lessee assumes responsibility for the 'actions, damages, or destruction to said premises caused by Lessee's visitors, guests or invitees.'" *Id.* at 6.

Plaintiffs' argue that the above statements are inadmissible as legal opinions or conclusions. Defendants maintain that Ms. Navarro is merely opining on the industry standard, an area Defendants believe is well within her area of expertise. [Doc. 401, p. 2].

"[E]xpert testimony on legal matters is not admissible. Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *see also United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995) ("[Q]uestions of law are the subject of the court's instructions and not the subject of expert testimony.") (citation omitted). Ownership, possession, control, and authority are legal opinions or conclusions, so Ms. Navarro's initial opinion and opinions [1] and [6] should be excluded. Opinion [7], in its entirety, states the industry standard for inclusion of particular lease terms. But the opinion also includes the effect of those lease provisions: "this is a common requirement of any buyer, and is typically intended to avoid modifications that will jeopardize the Buyers intended future use of the property." [Doc. 382-2,

11

p. 4]. This is legal interpretation of a contract provision and should be excluded. Regarding Opinion [12], Ms. Navarro does note the absence of a repair request in the materials she reviewed, which Defendants believe accurately summarizes Ms. Navarro's findings after reviewing the materials in the record. Again, however, the opinion goes farther than that, into the duties required under a contract. That is a legal opinion, and Ms. Navarro's Opinion [12] is excluded except as it pertains to the absence of a repair request in the documents she reviewed. Opinions [14] and [16] state and interpret the law, and for the reasons discussed above, are improper expert testimony and thus excluded.

Additionally, Plaintiffs challenge the following opinion on the grounds that Ms. Navarro is not qualified to testify as an expert to the state of mind of the Parties: "3. The Contract and Subsequent Amendments contained many contingencies, and all parties were aware that it may not close without satisfying these contingencies." *Id.* at 4. Defendants contend that this opinion is not speculation because Ms. Navarro relied on testimony and contract documents in the record. [Doc. 401, p. 7]. Plaintiffs contend it is unclear from Ms. Navarro's report what documents she relied on in forming this specific opinion, since she does not make specific citations to the record. [Doc. 433, p. 4]. Without the benefit of knowing what specific documents Ms. Navarro relied on in forming her opinion, the Court agrees with Plaintiffs that Opinion [3] is excluded as an improper inference of the knowledge of the parties. This ruling is subject to reconsideration if Ms. Navarro identifies specific statements by the parties about their understanding, for example.

Finally, Plaintiffs challenge the following opinions on the grounds that the opinions themselves are improper expert testimony because they would not assist the trier of fact:

12

- [10] "There was no reference, however, in any of the documents and relevant emails I reviewed that states there is a 'Joint Venture' between Buyer & Seller." *Id.* at 5.
- [11] "Based on my review of the referenced material, I found no evidence that the temporary repair in question was disclosed to ACC by the Seller Derrow Properties or Ginger C, LLC." *Id.*

Defendants contend that this testimony is helpful to the jury—who will not be able to review all documents in the record—and accurately summarizes Ms. Navarro's findings after reviewing the materials. The Court disagrees. As for the phrase "joint venture", the relevant legal documents or emails that Ms. Navarro might be referring to are not so voluminous that a jury will not be able to decide whether the phrase "joint venture" is present in the evidence actually admitted at trial. As for the issue of disclosure by Derrow Properties, the testimony of the relevant witnesses or admission of relevant documents as to whether there was disclosure is easily solicited for the jury. Having an expert nebulously refer to unknown documents not containing evidence of disclosure is not very helpful and could be misleading. Her observations are therefore inadmissible under Rule 702.

Plaintiffs' Motion is granted as to Ms. Navarro's Opinions [10], [11], and the portion of Opinion [12] that relates to the absence of a repair request in the record, as well as Ms. Navarro's initial opinion and Opinions [1], [3], [6], [7], [12], [14], and [16]. Because the Court excludes each of Ms. Navarro's opinions challenged in Plaintiffs' Motion, Plaintiffs' Motion to Exclude Expert Opinions of Audrey Navarro is granted, although this does not exclude Ms. Navarro as an expert altogether.

As with Mr. White, Defendants note that Ms. Navarro may be asked to rebut specific allegations by Plaintiffs' experts. [Doc. 399, p. 8]. Impeachment of expert witness through contradictory testimony by another qualified expert is permitted under the Federal Rules of Evidence. *TAMKO Bldg. Products, Inc. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1144

(E.D. Mo. 2012). However, because the challenged testimony of Plaintiffs' experts does not touch on the subjects listed above, Defendants must ensure not to introduce testimony on rebuttal that the Court has excluded through this Order.

### D. Carl Martin

Carl Martin is the President of Engineering Perspective, Inc., and served twenty-eight years in forensic engineering services as the principal engineer for that company. [Doc. 402-1, p. 11]. He holds both a Bachelor's Degree in Mechanical Engineering and a Master's Degree in Engineering Management. *Id.* Mr. Martin "performed an engineering analysis of the balcony railing at issue in this case, and opines about the custom and practice in the industry for property condition assessments on existing property to be redeveloped." [Doc. 402, p. 2]. Defendants designated Mr. Martin "to refute Plaintiffs' allegation that the railing caused Mr. Lipp's accident and to discredit Plaintiffs' experts' [] opinions." *Id.*

Plaintiffs challenge four of Mr. Martin's opinions. First, Mr. Martin states that it is "possible" the balcony's top rail was already detached when Jack Lipp fell. [Doc. 369-1, p. S-4]. Plaintiffs contend that, since Mr. Martin cannot establish *with certainty* whether or not the rail was detached, the opinion is speculative and must be struck. The Court disagrees. As the Eighth Circuit has noted, some speculation is inevitable. *See Group Health Plan, Inc. v. Philip Morris USA, Inc.,* 344 F.3d 753, 760 (8th Cir. 2003). Although speculative statements are inadmissible as a general rule, "that does not mean that testimony must be excluded if an expert occasionally speculates . . ." *Id.* In situations such as this—where no expert can establish a fact with certainty—a certain amount of speculation is necessary. The issue can be addressed by Plaintiffs' own expert, Mr. Childress, who admits that he cannot be sure whether or not the railing was present yet still opines that "[t]he balcony railing is reported to have been in place at the time

14

[Jack Lipp] is reported to have fallen." [Doc. 402-2, p. 5]. Plaintiffs' concerns that it could be equally probable that the top rail was intact goes to weight, not admissibility, and may be addressed during cross-examination. *See Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) ("As long as the expert's . . . testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset.") (citing *Daubert,* 509 U.S. at 596).

Second, Plaintiffs challenge Mr. Martin's reliance on Defendants' actual knowledge in his assessment. Specifically, Plaintiffs allege Mr. Martin "conflates the defendants' actual knowledge with facts that have come to light only through discovery in this litigation, attempting to provide defendants with redeeming knowledge they simply did not have when Jack Lipp died[:] that the balcony of the 507 Property was 'effectively made safe' by the tenants and owners by making it a controlled access zone . . ." [Doc. 369, p. 4]. The issues in this case include Defendants' knowledge and conduct; the tenants of 507 South Fourth Street are not Parties. Plaintiffs contend, then, that because "[n]o defendant has testified that it had knowledge of the lock on the balcony door, or that it knew of the alleged sign posted by [the tenant]," Mr. Martin's opinion regarding safety precautions must be excluded.

Defendants suggest "all Mr. Martin does is opine that the balcony was in a controlled access zone." [Doc. 402, p. 7]. But Mr. Martin also states that the "tenants <u>and owners</u> addressed the unsafe condition" without pointing to any evidence in the record that the owners of the property knew about any warning sign or locked doors. As a result, the Court will exclude Mr. Martin's testimony that the owners knew of or attempted to address the unsafe condition.

Third, Plaintiffs move to strike Mr. Martin's opinion regarding whether a temporary balcony railing, if present, was so conspicuous that a reasonable person would have recognized it

15

as a hazard because it is inconsistent with his other testimony and he is not qualified to give an opinion on human factors like visibility. [Doc. 369, pp. 6–7]. While Mr. Martin never specifies that a person on the night of the accident would have seen the railing, or that Jack Lipp himself saw the railing, but only that the railing would have provided notice to "someone," [402-2, p. 5] the small probative value of this testimony is outweighed by its potential to suggest that there was sufficient visibility on the deck on the night in question for Lipp to see the repair. There is no evidence Mr. Martin has an expertise that would assist the jury on this issue. His opinion is therefore excluded.

Finally, Plaintiffs challenge Mr. Martin's opinion that even if the balcony railing had been code compliant, it would not have prevented Jack Lipp's fall. [Doc. 402-2, p. S-4]. He opines that (1) many residential deck railings exist that cannot withstand 200 pounds of force, and (2) the fall conditions do not support the idea that a code-compliant railing would have prevented the fall. As Defendants argue, however, Plaintiffs' expert Mr. Childress also admits that "people fall off balconies all the time, unfortunately," despite the presence of a railing. [Doc. 402-3, p. 4]. It is within Mr. Martin's area of expertise and is not speculative to note that "many residential deck railings exist that cannot withstand 200 pounds of force." That opinion is admissible under Rule 702. But because Mr. Martin admits that he does not know the details of how Jack Lipp fell, and because his report does not explain what conditions he is referring to nor what process he used in making his opinion, Mr. Martin's statement that "the fall conditions do not support the idea that a code-compliant railing would have prevented the fall" is excluded. *See Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006) ("Where 'opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert,' a district court

'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'").

Defendants once again note that Mr. Martin may be asked to rebut specific allegations by Plaintiffs' experts. [Doc. 399, p. 8]. Impeachment of expert witness through contradictory testimony by another qualified expert is permitted under the Federal Rules of Evidence. *TAMKO Bldg. Products, Inc. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1144 (E.D. Mo. 2012). However, Defendants must ensure not to introduce testimony on rebuttal that the Court has excluded through this Order.

### E. Dr. Alfred Bowles

Dr. Alfred Bowles is a Principal Consultant at Biodynamic Research Corporation. He holds degrees in Mechanical Engineering (B.S.) and Medicine (M.D.). His consulting practice is focused on "understanding how traumatic injuries occur as a result of physical exposure to forces, accelerations and external stresses that apply to people in vehicle crashes, transportation mishaps, workplace incidents and equipment malfunctions." [Doc. 405-1, p. 1]. Defendants retained Dr. Bowles, in part, to refute Plaintiffs' allegation that the railing caused Mr. Lipp's accident and to discredit Plaintiffs' Expert Dr. Mariusz Ziejewski's opinions. [Doc. 405, p. 2].

Plaintiffs move to exclude Dr. Bowles because he cannot state his opinions with certainty. [Doc. 370, pp. 1–2]. For example, in Dr. Bowles' Opinion 13 he states: "There is insufficient information available to indicate that Mr. Lipp's presumed fall would have been prevented by a code-compliant railing since Mr. Lipp's activities and intentions are unknown in the moments around the time of his alleged fall." [Doc. 370-2, p. 10]. Plaintiffs contend that, without certainty, Dr. Bowles' opinions are not relevant and will not assist the trier of fact.

17

The Court is unconvinced at this time. A qualified expert that explains why an opposing expert's theory cannot be certain is both relevant and helpful to the trier of fact. No fact witnesses have testified that the railing was in place at the time of the accident, no witnesses saw Jack Lipp on the balcony, and no witnesses saw him fall. [Doc. 405, p. 3]. No expert can give an opinion about what happened precisely under these circumstances. Plaintiffs' Motion to Exclude the Testimony of Alfred Bowles, [Doc. 370] for lack of certainty is denied.

### F. Fred Crouch

Fred Crouch is a real estate attorney that represents lenders, sellers, and buyers in commercial real estate transactions. [Doc. 400-1, p. 14]. Defendants designated Mr. Crouch to testify to the redevelopment process and to rebut the Plaintiffs' experts' opinions. [Doc. 400, p. 3]. Plaintiffs' objections to Mr. Crouch's testimony mirror those in their Motion to Exclude Mr. Michael White—namely that Mr. Crouch's opinions constitute improper expert testimony that interprets legal documents and states legal conclusions.

For the reasons discussed above in Part B, analyzing Plaintiffs' Motion to Exclude the Testimony of Michael White, Mr. Crouch's opinions regarding the existence of an agency relationship, ownership, control, the Parties' intent, the interpretation of statutes or legal documents, and any other opinions that state legal conclusions are excluded. *See Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1409 (8th Cir. 1989) ("[t]he special legal knowledge of the judge makes the witness' testimony superfluous [and] [t]he admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case.") (citation omitted); *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005) ("When . . . expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements.");

*Specht v. Jensen*, 853F.2d 805, 809 (10th Cir. 1988) ("testimony on ultimate issues of law" by an expert witness "is inadmissible because is it detrimental to the trial process").

Plaintiffs' final category of challenged opinions—"Opinions that consist of rank speculation and hyperbole"—are not excluded. At this stage, the Court cannot say as a matter of law that these statements are inadmissible. The matter can be raised again at trial in the context of the testimony of Mr. Crouch.

As noted above, impeachment of expert witness through contradictory testimony by another qualified expert is permitted under the Federal Rules of Evidence. *TAMKO Bldg. Products, Inc. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1144 (E.D. Mo. 2012). However, Defendants must ensure not to introduce testimony on rebuttal that the Court has excluded through this Order.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motions to Exclude Defendants' Expert Michael White, [Doc. 367], Carl Martin, [Doc. 369], and Fred Crouch, [Doc. 377], are granted in part and denied in part. Plaintiffs' Motion to Exclude the Testimony of Alfred Bowles, [Doc. 370], is denied. Plaintiffs' Motion to Exclude the Testimony of Audrey Navarro, [Doc. 368] is granted.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 19, 2017
Jefferson City, Missouri