# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| JOHN P. LIPP and STEPHANIE S. LIPP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-04257-NKL |
| | ) | |
| GINGER C, L.L.C., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ORDER

Before the Court are Defendants ACC and Ginger C's Motions to Exclude Testimony of David Chase [Docs. 354, 363] and Robert Griswold [Docs. 355, 365]. For the following reasons, Defendants' Motions are granted in part and denied in part.

## I.     Background

On December 12–13, 2014, former Defendant Phi Kappa Phi Fraternity members hosted a party at 507 South Fourth Street in Columbia, Missouri. Jack Lipp arrived at this party sometime after 11:00 p.m. At some point in the next hour, Lipp went onto a second-floor balcony on the south side of the property. Columbia Police believe party attendees had been urinating off the deck throughout the night due to long bathroom lines inside the house. Lipp fell 18 feet off the balcony to the driveway below. Lipp died on December 25, 2014 as a result of his injuries.

The balcony railing had been temporarily repaired by a prior owner of the property with wooden boards. Many of the issues in this case center around the condition of the balcony—who

was responsible for repairing it, whether a balcony railing was in place, etc. At the time of Lipp's injury, 507 South Fourth Street was owned by Ginger C, which had an agreement with ACC to redevelop the property. ACC planned to remove the existing structure on the premises to make room for a large student apartment complex, and to this end ACC financed Ginger C's purchase of the property. However, in the spring and summer of 2014, the Columbia City Council repeatedly tabled its consideration of ACC's proposed project. Due to this delay, the existing structure was leased in August 2014 to three male students, members of the PKP Fraternity, for the upcoming school year. Roland Management had an agreement with Ginger C to manage the rental property at 507 South Fourth Street.

Plaintiffs—the surviving parents of Jack Lipp—filed this suit on November 9, 2015. Their Fourth Amended Complaint, [Doc. 191], contains four counts of negligence, one each against ACC, Ginger C, Roland, and Scott Swafford, as Class Representative for Pi Kappa Phi Fraternity. Plaintiffs reached a settlement with Pi Kappa Phi, which the Court approved, and Scott Swafford was terminated as a Defendant thereafter.

Plaintiffs have designated a number of experts they expect to call at trial. Defendants moved to exclude the testimony of two experts: Mr. David Chase and Mr. Robert Griswold.

## II.    Discussion

### A.  Legal Standard

Federal trial judges have "broad discretion" in making decisions concerning expert testimony's admissibility. *Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). Under Fed. R. Evid. 702 and the guidance set forth in *Daubert*, expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC,* 754 F.3d 557, 562 (8th Cir. 2014) (citing *U.S. v. Finch,* 630 F.3d 1057, 1062 (8th Cir. 2011) (holding that doubts about usefulness

2

of expert testimony are resolved in favor of admissibility); *Robinson v. GEICO Gen. Ins. Co.,* 447 F.3d 1096, 1100 (8th Cir. 2006) (holding that expert testimony should be admitted if it "advances the trier of fact's understanding to any degree"); *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) (Rule 702 "clearly is one of admissibility rather than exclusion"). "As long as the expert's . . . testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (citing *Daubert,* 509 U.S. at 590, 596). Exclusion of expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.,* 112 F.3d 306, 309 (8th Cir. 1997).

Even so, pursuant to *Daubert*, the Court's role as "gatekeeper" in determining the admissibility of expert testimony requires the Court to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93. This question of whether "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" is known as the "reliability and relevancy" test. *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, (1999)). "The main purpose of *Daubert* exclusion is to prevent juries from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig.,* 644 F.3d 604, 613 (8th Cir. 2011).

"When making the reliability and relevancy determinations, a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique

3

has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." *Russell*, 702 F.3d at 456 (citing *Daubert*, 509 U.S. at 592-94).

### B. Mr. Chase's Testimony

Mr. David Chase is a licensed architect who works in commercial real estate development and has extensive experience "housing (senior, assisted living, public, multi-family and single detached), health care, commercial, hospitality and retail projects." [Doc. 364-1, p. 38]. He holds a Bachelors and Masters degree in Architecture.

Defendants ACC and Ginger C both move to exclude Mr. Chase's testimony. ACC argues that Mr. Chase's opinions are "legal conclusions that are not the proper subject of expert witness testimony" and "mere *ipse dixit* testimony that do[es] not relate in any way to his claimed education or experience." [Doc. 364, pp. 1–2]. Ginger C similarly asks the Court to exclude or limit Mr. Chase's testimony because his opinions "either legal in nature or are untrustworthy and unreliable." [Doc. 354, p. 9].

Plaintiffs concede that Mr. Chase's report includes statements that the Court would not permit at trial. [Doc. 403, p. 1]. Plaintiffs ask the Court to allow Mr. Chase's testimony and contend that it is Plaintiffs' counsel's responsibility not to solicit the legal opinions or conclusions in Mr. Chase's report and deposition. *Id.* at 2. Plaintiffs have the burden of establishing the admissibility of Mr. Chase's testimony by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001).

Defendant ACC seeks to exclude the entire testimony of Mr. Chase, arguing that his opinions are legal conclusions that are not related to his education and experience. ACC seems to argue that, because Mr. Chase started a consulting firm and no longer practices as an architect,

he cannot rely on his years of experience in that industry. *See* [Doc. 364, pp. 3–5]. The Court disagrees; Mr. Chase's education and experience helps form reliable and relevant opinions that will assist the trier of fact. *See Daubert*, 509 U.S. 579. Insofar as individual testimony is challenged because it is not supported by the record or because it calls for legal conclusions, those arguments are addressed in Ginger C's Motion to Exclude Mr. Chase.

Defendant Ginger C seeks to exclude the testimony of Mr. Chase or, in the alternate, exclude four of the opinions from Mr. Chase's report and deposition regarding Ginger C. Having found that Mr. Chase should not be excluded from testifying altogether, the Court will analyze the individual opinions challenged by Ginger C: (1) that Ginger C should have "undertake[n] [a] customary Due Diligence Property Condition Surveying of 507 South Fourth Street, prior to purchase."; (2) that Ginger C was eligible to apply for a "transfer" Certificate of Compliance under City of Columbia Ordinance 22-192(b) and violated that provision by failing to do so within fifteen days after closing on 507 S. Fourth Street; (3) that Ginger C's failure to apply for a Certificate of Compliance either "at closing or a reasonable time frame there-after" caused Jack Lipp's death; and (4) that Ginger C had a higher standard of care because it is a "sophisticated" property owner. [Doc. 354, p. 2].

Ginger C maintains that Mr. Chase misunderstands the law and creates a legal duty that does not actually exist. Further, regardless of any mischaracterization, in his opinion (1), Mr. Chase seeks to explain what duties are owed by and to whom, which are questions of law and should be excluded. *See Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible."); *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.3d 1402, 1409 (8th Cir. 1989) ("[S]pecial legal knowledge of the judge makes the witness' testimony superfluous [and] [t]he admission of such testimony would give the appearance that the court was shifting to witnesses

5

the responsibility to decide the case."). However, testimony on the standard of care generally—not what duties are owed by and to whom—is admissible. *See Lafarge N.A. v. Discovery Group, LLC,* case no. 05–1110–CV–W–FJG, 2010 WL 3025120, *3 (W.D. Mo. July 30, 2010) ("Standard of care for real estate professionals is a relevant concern in this matter, and the opinions of these experts speak to that concern."); *see also Southern Pine Helicopters, Inc. v. Phoenix Aviation Management, Inc.,* 320 F.3d 838, 841 (8th Cir. 2003) ("Standard of care for real estate professionals is a relevant concern in this matter, and the opinions of these experts speak to that concern.").

Therefore, Mr. Chase's opinions on the standard of care are admissible, but whether or not Defendants breached the applicable standard of care is a question of law and experts cannot testify to that issue. *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (expert testimony on reasonableness of police behavior in light of Fourth Amendment standards is statement of legal conclusions and is not admissible); *United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995) ("Questions of law are the subject of a court's instructions and not the subject of expert testimony."); *Cattanach v. Burlington N. Santa Fe, LLC*, No. 13-1664 (JRT/JSM), 2015 U.S. Dist. LEXIS 124718, at *25 (D. Minn. Sep. 18, 2015) ("Although experts may refer to the law in expressing [their] opinion[s], legal compliance and liability determinations are the province of the jury.").

In Opinion (2), Mr. Chase opines that Ginger C was eligible to apply for a "transfer" Certificate of Compliance under City of Columbia Ordinance 22-192(b) and that Ginger C violated that provision by failing to make an application within fifteen days of closing on 507 S. Fourth Street. Defendant Ginger C argues this is a "clear misreading of the ordinance and would not be helpful to the jury." [Doc. 354, p. 6]. Plaintiffs contend that Mr. Chase has extensive

experience in dealing with City Ordinances such as the City of Columbia ordinance at issue here

and the record shows that Ginger C purchased the 507 property on October 22, 2014 and that

Ginger C did not file the required application for certificate of compliance until November 20,

2014. "Those actions violated the City of Columbia ordinance 22-192, which required Ginger C

to apply for a new certificate of compliance 'upon the transfer of record,' which was on October

22, 2014 and not November 20, 2014. Mr. Chase testified that it is a standard of care in the real

estate industry to follow ordinances regarding city inspections and certificates of compliance."

[Doc. 403, p. 9]. While Mr. Chase cannot assist the jury by interpreting the statute, stating the

eligibility criteria and the applicable timeline is not legal analysis. Any disagreements with that

testimony may be addressed during cross examination. Of course, Mr. Chase may not testify that

Ginger C violated the ordinance.

In Opinion (3), Mr. Chase states that Ginger C's failure to apply for a Certificate of

Compliance either at the time of closing or a reasonable time thereafter caused Jack Lipp's death.

Defendants argue that "Mr. Chase has no factual basis to testify that Ginger C's timely

application for a Certificate of Compliance would have prevented Jack Lipp's death [so] [t]his

opinion is totally untrustworthy." But Mr. Chase does provide a factual basis for this opinion:

> After a property owner files a new application for certificate of compliance, the
> process usually takes around 30 – 45 days for the actual City inspection to occur.
> This is best evidenced by the fact that Ginger C filed its application on November
> 20th, 2014 and the actual City inspection occurred on January 14, 2015, which is
> 55 days later, including Thanksgiving and Christmas holidays. But had Ginger C
> filed the application on the day of transfer, October 22, 2014, the City would have
> had 51 days to conduct the inspection on the 507 property prior to Jack Lipp's
> fall.

[Doc. 403, pp. 9–10]. The Court finds that—while Mr. Chase cannot state his opinion with

certainty and qualifies it as such—the relevant timeline is helpful to the jury. Insofar as this

opinion calls for speculation, that may be addressed on cross examination. However, the Court

will not permit Mr. Chase to make the ultimate conclusion that it was the delay that caused Lipp's death. The issue of causation under these circumstances is for the jury.

Similar to Opinion (1), Mr. Chase seeks in Opinion (4) to testify to the legal standard of care, which he believes is heightened because of the Ginger C's "sophistication." Plaintiffs contend that in a lawsuit involving a real estate sale and transaction, the "[s]tandard of care for real estate professionals is a relevant concern, and the opinions of real estate experts speak to that concern." *Lafarge N.A. v. Discovery Group, LLC*, 2010 WL 3025120 (W.D. Mo. July 30, 2010). Plaintiffs also acknowledge that "this Court will set the appropriate standard of care and [Mr.] Chase will abide by the Court's determination." [Doc. 403, p. 7]. As discussed above, Mr. Chase may testify to the applicable standard of care, but he cannot apply that standard to the facts of this case in order to testify as to whether Defendants breached that standard. Therefore the Motion is denied as to opinion 4.

### C. Mr. Griswold's Testimony

Plaintiffs intend to offer the expert testimony of Robert S. Griswold CRE, CPM, CCIM, PCAM, GRI, ARM, as an expert property manager. Plaintiffs have designated Robert S. Griswold to "testify as to the standards of care for property management, negligence of the Defendants, and causation." Mr. Griswold's ultimate opinion is that the Defendants "failed to meet the standard of care in their ownership, operation, maintenance, and property management of said Subject Property on and prior to the date of the fatal incident involving Jack Lipp on or about December 13, 2014." [Doc. 355-1, p. 6].

In their respective motions, the ACC Defendants and Defendant Ginger C move to exclude or limit the testimony of Mr. Griswold, arguing: (1) Mr. Griswold's opinions of legal duties invade the province of the Court; (2) Mr. Griswold has not tied his opinions to his

experience and training, rendering his opinions nothing more than *ipse dixit* testimony, and (3) Mr. Griswold lacks sufficient factual basis for his opinions.

Plaintiffs counter that "Mr. Griswold will not opine about legal duties or otherwise provide testimony that invades the province of the Court. But, he should be allowed to testify about standards applicable to real estate professionals. In a lawsuit involving real estate, the '[s]tandard of care for real estate professionals is a relevant concern, and the opinions of real estate experts speak to that concern.'" [Doc. 394, p. 2] (quoting *Lafarge N.A. v. Discovery Group, LLC*, case no. 05–1110–CV–W–FJG, 2010 WL 3025120, *3 (W.D. Mo. July 30, 2010)). In cases like this, "[i]ndustry practice or standards may often be relevant . . . and expert or fact testimony on what these standards are is often admissible." *Id.* (citing *Southern Pine Helicopters, Inc. v. Phoenix Aviation Management, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)).

Defendants' respective motions to Exclude Mr. Griswold are granted in part and denied in part. The Court will not exclude the entirety of Mr. Griswold's testimony; his experience qualifies him to testify about, amongst other opinions, the "minimum industry standards of practice" in the property management field. That testimony meets both the reliability and relevancy prongs of *Daubert* and will assist the jury.

However, insofar as Mr. Griswold imposes legal duties on Defendants or applies the standard of care to Defendants in order to testify that they breached that standard, those are legal conclusions and analysis improper for expert testimony. Just as the Court analyzed above, no expert will be allowed to testify to legal conclusions or analyze legal matters.

The foundation and factual basis for his opinions may be challenged through cross examination. "Attacks on the foundation" of an expert's opinion and conclusions, and the completeness of the expert's methodology, go to the weight rather than the admissibility of the

expert's testimony. *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000); *Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003). The factual basis of an expert's opinion goes to the credibility of that testimony. *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## III.   Conclusion

For the foregoing reasons, Defendants' Motions to Exclude Testimony of David Chase, [Docs. 354, 363], are granted in part and denied in part. Defendants' Motions to Exclude Testimony of Robert Griswold, [Docs. 355, 365], are granted in part and denied in part.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  January 19, 2017
Jefferson City, Missouri